# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 20, 2010          Decided July 27, 2010

No. 06-3085

UNITED STATES OF AMERICA,
APPELLEE

v.

MARLIN MOORE,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 05cr00078-01)

*Sandra G. Roland*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Lisa B. Wright*, Assistant Federal Public Defender, entered an appearance.

*Sarah T. Chasson*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen, Jr.*, U.S. Attorney, and *Roy W. McLeese III* and *Elizabeth Trosman*, Assistant U.S. Attorneys.

Before: GINSBURG, TATEL and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

Concurring opinion filed by *Circuit Judge* KAVANAUGH.

GINSBURG, *Circuit Judge*: Marlin Moore was convicted of making a materially false statement, in violation of 18 U.S.C. § 1001(a)(2), because he signed a false name on a Postal Service delivery form. Moore admits he willfully signed a false name but argues his conviction must be reversed because no rational jury could have found the false name was "material" to any matter within the jurisdiction of the federal Government. We disagree and affirm his conviction.

## I. Background

Inspectors from the United States Postal Service intercepted a package containing powder cocaine and addressed to Karen White, whom the Postal Service believed was a "fictitious person," at 1315 Shepherd Street N.W. in Washington, D.C. The Postal Service and the Metropolitan Police Department (MPD) organized a "controlled delivery" in order to apprehend the recipient of the package. The MPD got a warrant authorizing them to replace most of the cocaine inside the package with flour, to place a tracking device inside the box, and to monitor the delivery of the package. Neither the MPD nor the Postal Service knew who would accept the package, but they were prepared to arrest anyone who, after delivery, attempted to open the package or to remove it from the premises.

Postal Inspector Alicia Bumpas, posing as a letter carrier, attempted to hand deliver the package to the indicated address. When no one answered her knock on the door, Bumpas prepared to fill out a Postal Service form notifying

the addressee a parcel was waiting and could be obtained by picking it up or by arranging for another delivery. Before Bumpas could complete the form, Moore arrived at the house and used a key to open the front door.

Bumpas told Moore she had an Express Mail package for Karen White, and asked whether White lived there and whether she was home. Moore said White was not home and he would sign for the package. When asked his relationship to White, Moore said he was her boyfriend. Bumpas asked Moore to sign the delivery form and the Express Mail label and Moore signed the name "Kevin Jones" on each. Moore then took the package, placed it inside the house, shut the door, and left the premises. Soon thereafter he returned to the house and retrieved the package. He was arrested when he attempted to leave with it.

Moore was charged with various drug-related crimes not relevant to this appeal. He was also charged with making a materially false statement about a matter within the jurisdiction of the United States Postal Service, in violation of 18 U.S.C. § 1001(a)(2). Moore admitted at trial that he signed the delivery form and the Express Mail label using a false name. On appeal Moore challenges the sufficiency of the evidence supporting his conviction for making a materially false statement in violation of § 1001.

## II. Analysis

Our review of the sufficiency of the evidence supporting the judgment of the district court is limited; we must affirm the jury's verdict of guilty if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dykes*, 406 F.3d 717, 721 (D.C. Cir. 2005). In making this determination, we view the prosecution's evidence in the light most favorable to the

Government and "giv[e] full play to the right of the jury to ... draw justifiable inferences of fact." *Id.*

To prove Moore made a statement in violation of 18 U.S.C. § 1001(a)(2), the Government must show he (1) "knowingly and willfully" (2) "[made] any materially false, fictitious, or fraudulent statement or representation" (3) in a "matter within the jurisdiction of the executive ... branch of the Government of the United States." Moore argues only that the Government's evidence was insufficient to support a finding that his admittedly false statement was "materially false."

Section 1001 does not define "materially false." The Supreme Court has said a statement is materially false if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed." *United States v. Gaudin*, 515 U.S. 506, 509 (1995). Many of our sister circuits have adopted a somewhat broader approach to determining materiality, asking not only whether a statement might influence a discrete decision, but also whether a statement might affect in any way the functioning of the government agency to which it was addressed. *See, e.g.*, *United States v. Alemany Rivera*, 781 F.2d 229, 235 (1st Cir. 1985) ("test for materiality under 18 U.S.C. § 1001 is ... whether [the statement] had the capacity to influence a government function"); *United States v. Lichenstein*, 610 F.2d 1272, 1278 (5th Cir. 1980) ("false statement must simply have the capacity to impair or pervert the functioning of a government agency"); *United States v. White*, 270 F.3d 356, 365 (6th Cir. 2001) ("'materiality' is a fairly low bar .... [T]he government must present at least some evidence showing how the false statement in question was capable of influencing federal functioning."); *United States v. Moore*, 446 F.3d 671, 681 (7th Cir. 2006) (statement

is material if it "has a natural tendency to influence, or ... is capable of affecting, a government function"); *United States v. Calhoon*, 97 F.3d 518, 530 (11th Cir. 1996) ("it is enough if the statements had a natural tendency to influence[] or [were] capable of affecting or influencing a government function") (internal quotation marks deleted); *see also Brogan v. United States*, 522 U.S. 398, 403 (1998) (§ 1001 at least "protect[s] the authorized functions of governmental ... agencies from the perversion which might result" from relying upon a false statement); *United States v. Sarihifard*, 155 F.3d 301, 307 (4th Cir. 1998) (stating distinction between discrete decision and general investigation by grand jury is "irrelevant" to materiality).

In determining whether a false statement is material this court has consistently asked whether the statement has a tendency to influence a discrete decision of the body to which it was addressed. *See, e.g.*, *United States v. Winstead*, 74 F.3d 1313, 1320–21 (1996); *United States v. Hansen*, 772 F.2d 940, 949 (1985). We have, however, suggested a "lie distorting an investigation already in progress" also would run afoul of § 1001. *Hansen*, 772 F.2d at 949. We now join the other circuits in holding a statement is material if it has a natural tendency to influence, or is capable of influencing, either a discrete decision or any other function of the agency to which it was addressed.

Moore argues that even with this understanding of materiality we must reverse his conviction because his false statement was "not capable of influencing the Postal Service" in any way. He notes that when Inspector Bumpas gave him the package and asked him to sign for it, "she did not know his name, she did not ask his name, and she did not ask him for identification."

We agree the evidence shows the name that Moore signed was immaterial to Inspector Bumpas's decision to deliver the package to him. In keeping with the reasoning above and in *Gaudin*, however, the question of materiality is not to be answered by reference only to the specific circumstances of the case at hand. As the Supreme Court explained in *Gaudin*, a statement need not actually influence an agency in order to be material; it need only have "a natural tendency to influence, or [be] capable of influencing" an agency function or decision. 515 U.S. at 509; *accord Hansen*, 772 F.2d at 949 ("Proof of actual reliance on the statement is not required; the Government need only make a reasonable showing of its potential effects"); *United States v. McBane*, 433 F.3d 344, 351 (3d Cir. 2005) ("the phrase 'natural tendency' connotes qualities of the statement ... that transcend the immediate circumstances in which it is offered and inhere in the statement itself").

Moore points out that at trial the Government failed to present any testimony or other evidence specifically for the purpose of establishing the materiality of Moore's false statement. Nonetheless, we hold the evidence that was presented more than sufficed for a reasonable jury to conclude, as the Government argued at trial, that Moore's false statement was capable of affecting the Postal Service's general function of tracking packages and identifying the recipients of packages entrusted to it. Moore's use of a false name also could have impeded the ability of the Postal Service to investigate the trafficking of narcotics through the mails. *See United States v. Baker*, 200 F.3d 558, 561 (8th Cir. 2000) (fictitious home address provided by subject of Postal Service investigation was material because it could have inhibited the Postal Service's ability "to carry out its core function of delivering the mail" and furthered the defendant's

attempt to "[make] herself hard to find during the investigation").

What was that evidence? First, Inspector Bumpas testified she would not have delivered the package unless she received a signature identifying the recipient. From this the jury could reasonably infer one function of the Postal Service is to track certain types of packages and to identify the recipients thereof. Clearly, signing a false name on a delivery form may adversely affect the ability of the Postal Service to perform this function.

Second, Postal Inspector Mark Mancuso testified to having used, in the course of a narcotics investigation, a Postal Service "database that will track who signed for a package." In this case the Postal Service did not need to rely upon the name signed on the delivery form in order to identify Moore but only because, soon after leaving the premises, he returned and was arrested by the police staked out there. Had Moore not returned, his having given a false name could have prevented the Postal Service from identifying and locating him in pursuit of its investigation.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is

*Affirmed.*

KAVANAUGH, *Circuit Judge*, concurring:

This case is novel: The Government has obtained a false statements conviction under 18 U.S.C. § 1001 against an individual who signed the wrong name on a postal delivery form. I join the Court's opinion. I add these brief concurring comments because this case highlights one of the difficult issues that can arise in prosecutions under the ever-metastasizing § 1001 – namely, the mens rea requirements for the statute, which by its text proscribes only those false statements that are "knowingly and willfully" made.

\* \* \*

Federal prosecutors tried Moore twice for various drug offenses, but both times the jury hung. In the second trial, prosecutors tacked on a false statements charge under § 1001. The charged false statement? Moore signed the wrong name on a Postal Service delivery form, PS Form 3849. Unlike many government forms, PS Form 3849 contained no warning that an inaccurate statement might be a crime. And it is not otherwise clear that Moore (or most people) would know that signing the wrong name on a postal delivery form is a crime. But the defense did not request a knowledge-of-law instruction, and the District Court did not require the Government to prove that the defendant knew his conduct was unlawful. Moore was convicted of the false statements count and sentenced on that charge alone to five years in prison.

As many others have noted, § 1001 prosecutions can pose a risk of abuse and injustice. In part, that's because § 1001 applies to virtually any statement an individual makes to virtually any federal government official – even when the individual making the statement is not under oath (unlike in perjury cases) or otherwise aware that criminal punishment can result from a false statement. *See, e.g.*, Alex Kozinski &

Misha Tseytlin, *You're (Probably) a Federal Criminal*, *in* IN THE NAME OF JUSTICE 43, 47 (2009) ("Your mom taught you not to lie, but she probably didn't tell you that making a false statement to any federal official dealing with any matter in his jurisdiction will make you a federal criminal."); *cf. United States v. Yermian*, 468 U.S. 63, 82 (1984) (Rehnquist, J., dissenting) (§ 1001 can be used to punish "the most casual false statements so long as they turned out, unbeknownst to their maker, to be material to some federal agency function . . . . [making] a surprisingly broad range of unremarkable conduct a violation of federal law") (internal quotation marks omitted).

Proper application of statutory mens rea requirements and background mens rea principles can mitigate the risk of abuse and unfair lack of notice in prosecutions under § 1001 and other regulatory statutes. In § 1001 cases, that means proof that the defendant knew that making the false statement would be a crime. To be sure, "ignorance of law is no defense" is a hoary maxim. But it does not automatically apply to today's phalanx of federal regulatory crimes. *See* WAYNE R. LAFAVE, CRIMINAL LAW § 5.6, at 298-311 (5th ed. 2010). For some regulatory offenses – particularly statutes like § 1001 that proscribe only "willful" conduct – the Supreme Court has recognized an ignorance-of-law or mistake-of-law defense, or has required affirmative proof of the defendant's knowledge that his or her conduct was unlawful. *See Bryan v. United States*, 524 U.S. 184, 191-92 (1998); *Ratzlaf v. United States*, 510 U.S. 135, 141-49 (1994); *Cheek v. United States*, 498 U.S. 192, 199-201 (1991); *Lambert v. California*, 355 U.S. 225, 229-30 (1957); *cf. Liparota v. United States*, 471 U.S. 419, 425-26 (1985); Dan M. Kahan, *Ignorance of Law* Is *an Excuse – But Only for the Virtuous*, 96 MICH. L. REV. 127, 150 (1997) (noting that "courts permit mistake of law as a defense [] selectively

across malum prohibitum crimes"). For criminal statutes prohibiting "willful" violators, those cases together require proof that the defendant was aware that the conduct was unlawful.

In *Bryan*, the Supreme Court summarized the rule quite clearly: "[I]n order to establish a willful violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." 524 U.S. at 191-92 (internal quotation marks omitted). Since *Bryan*, the Court has reiterated this formulation on several occasions. *See also Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57 n.9 (2007) ("we have consistently held that a defendant cannot harbor such criminal intent unless he acted with knowledge that his conduct was unlawful") (internal quotation marks omitted); *Dixon v. United States*, 548 U.S. 1, 5 (2006) (the term "willfully" "requires a defendant to have acted with knowledge that his conduct was unlawful") (internal quotation marks omitted).[*]

It is true that our Court many years ago seemed to assume (in addressing a mens rea issue under a different statute) that proving the defendant's knowledge of the law may not be required in § 1001 cases. *See United States v. Hsia*, 176 F.3d 517, 522 n.3 (D.C. Cir. 1999). In so doing, *Hsia* referenced a 1994 Third Circuit opinion that pre-dated the Supreme Court's clarifying decisions in *Bryan* and later cases. That assumption may not endure in light of those subsequent

---

[*] To say that the Government must prove the defendant knew the conduct was a crime is not necessarily to say that the Government must prove the defendant knew the specific code provision proscribing the conduct, except with respect to certain highly technical statutes. *See Bryan*, 524 U.S. at 194; *cf. Ratzlaf*, 510 U.S. at 141 (anti-structuring statute); *Cheek*, 498 U.S. at 200 (tax statute).

Supreme Court precedents. In a future case, we therefore may need to consider the appropriate mens rea requirements and defenses for § 1001 prosecutions under those Supreme Court decisions.

Here, however, there is no legal obstacle to our affirming Moore's § 1001 conviction: Moore did not contend that the term "willfully" in § 1001 requires proof of the defendant's knowledge of the law, and he did not challenge the jury instructions on that basis. But in a case where the issue is raised, the Supreme Court's precedents arguably require district courts in § 1001 cases to give a willfulness instruction that requires proof that the defendant knew his conduct was a crime. To be sure, in many false statements cases the Government will be able to easily prove that the defendant knew his conduct was unlawful. But in some cases, it will not be able to do so – and those of course are precisely the cases where it would seem inappropriate and contrary to § 1001's statutory text to impose criminal punishment.