# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 22, 2010        Decided May 13, 2011

No. 09-3112

UNITED STATES OF AMERICA,
APPELLEE

v.

DAVID H. SAFAVIAN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cr-00370)

*Shannen W. Coffin* argued the cause for appellant. On the briefs were *Lawrence S. Robbins*, *Richard A. Sauber*, *Donald J. Russell*, and *Lisa K. Helvin*.

*Sangita Rao*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Lanny A. Breuer*, Assistant Attorney General, and *Nathaniel B. Edmonds*, Attorney. *Roy W. McLeese III*, Assistant U.S. Attorney, entered an appearance.

Before: GINSBURG and BROWN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

PER CURIAM: A jury found David Safavian guilty on four counts of a five-count indictment and acquitted him on one count. Safavian moved the district court for a judgment of acquittal and a new trial. The district court denied Safavian's motion, *United States v. Safavian*, 644 F. Supp. 2d 1 (D.D.C. 2009) (*Safavian III*), and Safavian appealed. We affirm Safavian's convictions on all four counts.

## I. Background

Safavian and lobbyist Jack Abramoff were longtime colleagues and friends. In 2002, when Safavian was appointed Chief of Staff of the General Services Administration, Abramoff began asking Safavian for information about two properties the GSA owned. Some time after Safavian supplied the information, Abramoff invited him on a golf trip to Scotland. Knowing certain laws and ethical rules governed who could pay for this trip, Safavian e-mailed the General Counsel of the GSA seeking ethical advice. Safavian's email explained he intended to pay the costs of his greens fees, hotels, and meals, but Abramoff would pay for airfare because Abramoff was chartering a private flight for all the attendees. Safavian's email also stated Abramoff "has no business before GSA (he does all of his work on Capitol Hill)." In response to that email, the ethics officer of the GSA (brought into the loop by the General Counsel) responded that, under the circumstances described, Safavian could accept the gift of free airfare. Before the group left for Scotland Safavian gave Abramoff a check for $3,100, the amount Abramoff had told him would cover his share of the costs of the trip excluding airfare.

Based upon an anonymous tip, the GSA Office of the Inspector General (OIG), the Senate Committee on Indian Affairs, and the Federal Bureau of Investigation investigated Safavian regarding the trip. He was thereafter indicted on five counts: three counts of "falsif[y][ing], conceal[ing] or cover[ing] up by any trick, scheme, or device a material fact" within the jurisdiction of any branch of the Government in violation of 18 U.S.C. § 1001(a)(1) and two counts of obstruction of justice in violation of 18 U.S.C. § 1505. Specifically, Count One alleged Safavian obstructed the investigation of the OIG; Count Two alleged he made a false statement and concealed information in the course of seeking an ethics opinion; Count Three alleged he made a false statement to and concealed information from the OIG; Count Four alleged he obstructed a Senate Committee's Investigation; and Count Five alleged he made false statements and provided false documents to that Senate Committee. Safavian was convicted on Counts One, Two, Three, and Five.

Safavian appealed and we either reversed or remanded his convictions on all four counts. *United States v. Safavian*, 528 F.3d 957 (2008) (*Safavian II*). The portion of the court's opinion relevant to this appeal pertains to Safavian's effort at his first trial to present the defense of literal truth to Counts One, Two, and Five. Safavian argued he did not make a false statement when he told the OIG, the ethics officer, and the Senate Abramoff was not "doing business" with the GSA because by "doing business" he meant — as any professional government contractor would have understood — that at the time of the trip Abramoff had no outstanding contracts and was not "exchanging property or services for money" with the agency. *Id.* at 962, 965–66. Although Safavian sought to introduce expert testimony to show his definition of that phrase was not "made up out of whole cloth," the district

court ruled Safavian's expert would not help the jury and would in fact confuse them. *Id.* at 966. On appeal we held the district court abused its discretion in excluding the expert's testimony and we remanded for a new trial. *Id.* at 966–69.

Following failed plea negotiations, the Government sought a second indictment against Safavian. The superseding indictment again charged Safavian with five counts. Three of the counts — Count One, obstructing the OIG's investigation; Count Two, making false statements in the course of seeking an ethics opinion; and Count Four, obstructing the Senate's investigation — mirrored charges in the original indictment. Counts Three and Five were based upon previously uncharged conduct. Pursuant to federal statute, certain governmental employees are required to report any gifts they receive in excess of a specified value. Ethics in Government Act of 1978, Pub. L. No. 95-521, Title I, § 102, 92 Stat. 1824, 1825 (codified as amended at 5 U.S.C. App.4 § 102(2)(A)); *see* 5 C.F.R. § 2634.304. In 2002, that disclosure threshold was set at $260. 65 Fed. Reg. 69,655, 69,655 (2000). Count Three alleged Safavian made a false statement on the Financial Disclosure form he submitted to the GSA in 2002 because he knew the portions of the trip Abramoff paid for exceeded that amount and, therefore, he falsely stated he received only one gift worth more than $260 in that year, to wit, an excursion paid for by a national political committee. Count Five charged Safavian with making false statements to an FBI agent during the course of the agency's investigation. The Government alleged Safavian falsely told the FBI that: (i) none of Abramoff's requests for information about two properties owned by GSA occurred prior to the trip to Scotland; (ii) at the time Abramoff invited Safavian to Scotland, Safavian was too new at the GSA to help Abramoff in his dealings with the agency; and (iii) Safavian paid in

advance for his share of the cost of the trip with the $3,100 check he gave Abramoff.

The jury convicted Safavian on Counts One, Two, Three, and Five, and again acquitted him on Count Four. After trial Safavian moved for an acquittal on Counts Three and Five on the ground they were added to the second indictment due to prosecutorial vindictiveness. He also moved for acquittal on Counts Two and Five, arguing the Government failed to prove his false statements to the ethics officer and to the FBI were material within the meaning of § 1001(a)(1). Finally, Safavian moved in the alternative for a new trial on Counts One and Three because, he argued, the district court improperly admitted evidence regarding the cost of the private plane Abramoff had chartered for the trip to Scotland and such evidence was prejudicial. The district court denied Safavian's motions and Safavian appealed.

We affirm the judgment of the district court. Our reasons for rejecting Safavian's arguments pertaining to Counts One, Two, and Three are the same as those set out in the opinion of the district court and we need not repeat them here. *See Safavian III*, 644 F. Supp. 2d at 8–10, 12–14, 19–23. Our reasons for rejecting Safavian's arguments pertaining to Count Five are set out below.

## II. Analysis

Count Five of the superseding indictment charged Safavian with making false statements to the FBI. As an initial matter, Safavian argues his conviction on that count must be reversed because the statements he made to the FBI were not material within the meaning of § 1001(a)(1). Safavian maintains that a statement is material only if it is actually capable of influencing a government action. Because

it is undisputed the agent who interviewed Safavian knew, based upon his knowledge of the case file, that the incriminating statements were false when Safavian uttered them, Safavian argues those statements were not capable of influencing the FBI's actions and were therefore not "material." As the Government points out, however, we rejected the same argument last term in *United States v. Moore,* 612 F.3d 698 (2010). In *Moore* we held "a statement need not actually influence an agency in order to be material; it need only have a natural tendency to influence or be capable of influencing an agency function or decision." *Id.* at 701–02 (internal quotation marks and alteration omitted). It follows that so long as Safavian's false statements were capable of influencing the course of the FBI's investigation — and we agree with the district court that but for the fortuity of the agent's preparation they could have done — those statements were material within the meaning of § 1001(a)(1). That leaves only Safavian's argument Count Five should be vacated under the doctrine of prosecutorial vindictiveness.

"The doctrine of prosecutorial vindictiveness developed as a corollary to the vindictiveness doctrine that precludes, as a matter of due process, imposition by a judge of a more severe sentence upon retrial after a defendant has successfully exercised a constitutional right or pursued a statutory right of appeal or collateral attack. In the prosecutorial context, the doctrine precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant during a criminal prosecution." *Maddox v. Elzie*, 238 F.3d 437, 446 (D.C. Cir. 2001) (internal citation omitted). A defendant may prove prosecutorial vindictiveness by submitting either (i) evidence of the prosecutor's actual vindictiveness or (ii) evidence sufficient to establish a "realistic likelihood of vindictiveness," thereby raising a presumption the Government must rebut with

objective evidence justifying its action. *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987) (internal quotation marks and alteration omitted), *reh'g granted and opinion vacated*, 816 F.2d 695 (D.C. Cir.), *reh'g denied and opinion reinstated*, 824 F.2d 1240 (D.C. Cir. 1987). If the Government can produce objective evidence that its motive in prosecuting the defendant was not vindictive, then "the defendant's only hope is to prove that the justification is pretextual and that actual vindictiveness has occurred." *Id.*

The district court held Safavian submitted evidence sufficient to raise a "presumption" the Government acted vindictively in adding Count Five. Because the Government offered two reasons the addition of Count Five was not vindictive, the district court found that presumption was nonetheless overcome. "This court reviews the District Court's finding regarding vindictiveness for clear error." *United States v. Gary*, 291 F.3d 30, 34 (D.C. Cir. 2002); *see also Meyer*, 810 F.2d at 1244–46, 1248–49. According the district court the deference it is due under this standard, we agree with Safavian that, upon the facts of this case, the district court did not clearly err in presuming vindictiveness on the part of the prosecution. Nor, however, did the district court clearly err in holding the Government overcame that presumption.

A.  Establishing the Presumption

To get the benefit of the presumption, a defendant must show the prosecutor's action was "more likely than not" attributable to vindictiveness. *See Gary*, 291 F.3d at 34 (quoting *Alabama v. Smith*, 490 U.S. 794, 801 (1989)). We have held "a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption in the pretrial context," *Meyer*, 810 F.2d at

1246, but it is surely a fact relevant to the analysis, *see id.* It is also a fundamental assumption of the doctrine of prosecutorial vindictiveness that a prosecutor, like a judge, being but human "may have a personal stake in [a] prior conviction and a motivation to engage in self-vindication," *United States v. Stanfield*, 360 F.3d 1346, 1362 (D.C. Cir. 2004) (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 27 (1973)), and it follows that a decision to add charges after a defendant's conviction has been reversed risks violating the defendant's right to due process. Accordingly, while it appears the only relevant fact the district court considered in erecting the presumption of vindictiveness was that the prosecutor added new charges after Safavian had successfully exercised his right to appeal,[*] we cannot say the district court clearly erred in presuming the Government was being vindictive in adding Counts Three and Five, regardless whether we would reach that conclusion were we making the decision in the first instance.

B.   Overcoming the Presumption

In concluding the Government offered objective evidence sufficient to rebut the presumption of vindictiveness, the district court relied upon both of the Government's proffered reasons for adding Count Five: The prosecution needed to change its trial strategy in the wake of this court's ruling in Safavian's first appeal by (1) ensuring Safavian's statements to the FBI were admissible so as to meet the defense of literal truth and any expert testimony concerning the meaning of the

---

[*] *See Safavian III*, 644 F. Supp. 2d at 13; *see also* Transcript of Motions Hearing at 7, *Safavian III* (Nov. 26, 2008) (contrasting the facts in *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978), with the facts at bar and noting that in Safavian's case "the threat of greater charges in the context of plea discussions ... was really a threat of greater charges post-successful appeal").

phrase "doing business" Safavian might offer; and (2) expanding the scope of the indictment so as to include unlawful actions lying outside that defense and beyond the scope of the defense expert's testimony. *Safavian III*, 644 F. Supp. 2d at 15–17.

The Government reiterates these arguments on appeal. First, the Government maintains it needed to add Count Five in order to undermine Safavian's defense of literal truth and the supportive expert testimony he planned to introduce concerning the meaning of the phrase "doing business." The Government maintains Safavian's statements to the FBI show he did not have the literal definition of the phrase "doing business" in mind when he spoke to the ethics officer about Abramoff's business dealings and, therefore, Safavian's statements to the FBI are crucial to its case. The Government contends its prosecutors were concerned, prior to the second trial, that the district court would hold Safavian's statements to the FBI were nonetheless inadmissible. To ensure the statements to the FBI would be admitted, the Government argues it was necessary to charge Safavian made them with the knowledge they were false, in violation of § 1001(a)(1). Second, the Government argues it added Count Five as a matter of trial strategy: Because this court had held Safavian should have been permitted to introduce expert testimony about the meaning of the phrase "doing business," the Government wanted to expand the focus of the prosecution beyond that of the original indictment; it sought to include other false statements Safavian made, unrelated to "doing business," as a way of hedging its risk.

Safavian argues these reasons are objectively unreasonable and the district court clearly erred in holding they were sufficient to overcome the presumption. As to the former, Safavian argues that if the Government "believed

[his] statements to [the FBI] were inconsistent with or negated his defense," then the Government "could have responded by introducing *evidence* of those statements, without charging an additional *offense*"; as to the latter, Safavian argues that because a "trial strategy is inherently subjective in nature," a prosecutor's "personal assessment" of the need to change a trial strategy after appeal cannot provide the "objective" justification necessary for overcoming the presumption of vindictiveness.

We agree with Safavian that the first of the Government's reasons is entirely unpersuasive. At his first trial, Safavian presented the defense of literal truth. This court's ruling the district court had erred in refusing to allow Safavian to present expert testimony in support of that defense could not reasonably have led the Government to doubt its ability, if it did not add Count Five, to introduce at the second trial Safavian's statements to the FBI. As the district judge recognized in a pretrial oral ruling addressing the same issue, Safavian's statements to the FBI were evidence of his state of mind and as such "would have come in with or without [Count Five] as a way to counter the proffered defense." Transcript of Motions Hearing at 10, *Safavian III* (Nov. 26, 2008). The showing required to overcome the presumption of vindictiveness is admittedly minimal — any objective evidence justifying the prosecutor's actions will suffice — but the Government's claimed inability to introduce Safavian's statements into evidence does not meet even that low standard.[*]

---

[*] The cases the Government cites in support of its position are not inapposite; in those cases the Government had objective reason to believe the evidence it sought to introduce would be excluded if a new charge was not added. *See United States v. Poole*, 407 F.3d 767, 776–77 (6th Cir. 2005) (not vindictive to add new charge to a

The district court's reliance upon the Government's second argument, however, was not clearly erroneous. The Government was objectively reasonable in responding to this court's ruling on appeal by changing its trial strategy and refocusing the indictment to include conduct lying outside the scope of the defendant's defense of literal truth and of his expert's testimony. Safavian's argument that a prosecutor's change in strategy is not an "objective" justification subject to judicial review is unpersuasive where, as here, the Government changed its trial strategy in response to an adverse ruling of the court; in this circumstance, the court's ruling provides a basis for assessing the objective reasonableness of the Government's adding a new charge. For example, if, instead of charging Safavian in the new count with conduct falling outside the scope of the defense of literal truth, the Government had charged Safavian with falsely telling the IRS (instead of a Senate Committee) that Abramoff did not "do business" with GSA, then it could not reasonably invoke our decision in *Safavian II* to justify its decision because the new charge would be as vulnerable to Safavian's defense of literal truth as was the old.

In this case the addition of Count Five was objectively reasonable and the presumption of vindictiveness was

superseding indictment to ensure introduction of evidence ruled inadmissible at first trial); *United States v. Hill*, 93 F. App'x 540, 546 (4th Cir. 2004) (not vindictive to charge overt acts of conspiracy as separate counts in superseding indictment to reflect evidentiary rulings in first trial); *cf. United States v. Davis*, 108 F. App'x 131, 135–36 (5th Cir.2004) (Government's explanation it added a conspiracy charge to a superseding indictment "as a way to 'overcome' issues of admissibility as to certain testimony" was "reasonable because the added ... charge allowed the [G]overnment greater flexibility in introducing witness testimony").

dispelled.  Inasmuch as Safavian offered neither argument nor evidence the Government acted with actual vindictiveness, his conviction must be

*Affirmed.*