KAVANAUGH, Circuit Judge,
with whom Circuit Judge TATEL joins, dissenting:
The presumption of mens rea embodies deeply rooted principles of law and justice that the Supreme Court has emphasized time and again. The presumption of mens rea is no mere technicality, but rather implicates “fundamental and far-reaching” issues, as this case well illustrates. Cf. Morissette v. United States, 342 U.S. 246, 247, 72 S.Ct. 240, 96 L.Ed. 288 (1952).
Under Section 924(c) of Title 18, a person who commits a robbery while carrying a semi-automatic gun faces a mandatory minimum sentence of 10 years. A person who commits a robbery while carrying an automatic gun is guilty of a more serious offense and faces a mandatory minimum sentence of 30 years. Congress specifically determined that carrying an automatic rather than semi-automatic gun during a robbery warrants an extra 20 years of mandatory imprisonment.[1]
*528 The majority opinion holds that a person who committed a robbery while carrying an automatic gun — but who genuinely thought the gun was semi-automatic — is still subject to the 30-year mandatory minimum sentence. The majority opinion thus gives an extra 20 years of mandatory imprisonment to a criminal defendant based on a fact the defendant did not know.
In my view, that extraordinary result contravenes the traditional presumption of mens rea long applied by the Supreme Court. Like many federal criminal statutes, this Section 924(c) offense contains no express mens rea requirement. But the presumption .of mens rea means that, unless Congress plainly indicates otherwise, the Government must prove the defendant’s mens rea for each element of the offense. And the Supreme Court has recently and unanimously ruled that the automatic character of the gun is an element of the Section 924(c) offense. See United States v. O’Brien, — U.S. -, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010). Therefore, in this case, the Government should have been required to prove that Burwell knew the gun was automatic in order to convict him under Section 924(c).
Several factors strongly reinforce the presumption of mens rea here. The Supreme Court has emphasized the particular importance of the presumption when penalties are high — a characterization the Court has applied to statutory maximum sentences of one year’s imprisonment. Here, the punishment is dramatically more severe than that — 20 extra years of mandatory prison time. Under the Supreme Court’s precedents, that heavy sanction strongly reinforces the presumption of mens rea. Moreover, the Supreme Court has already applied the presumption to the automatic character of a gun. In Staples v. United States, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), the Court addressed a statute that prohibited possession of an unregistered automatic gun and imposed a maximum sentence of 10 years’ imprisonment. The statute was silent about mens rea. The Court held that the Government had to prove that the defendant knew the automatic character of the weapon. There is no good reason for a different result in this case: Here, too, the Government should have to prove that the defendant knew the automatic character of the weapon.
The majority opinion sidesteps the presumption of mens rea by treating the automatic character of the gun as if it’s a sentencing factor, not an element of the Section 924(c) offense. But in O’Brien, the Supreme Court held that the gun’s automatic character is an element of the Section 924(c) offense, not a sentencing factor. 130 S.Ct. 2169. The O’Brien decision matters here because the Supreme Court has repeatedly stated that the presumption of mens rea applies to elements *529 of the offense, albeit not to sentencing factors. See Staples, 511 U.S. 600, 114 S.Ct. 1793 (element of the offense case); Dean v. United States, 556 U.S. 568, 129 S.Ct. 1849, 173 L.Ed.2d 785 (2009) (sentencing factor case). Because the automatic character of the gun is an element of the Section 924(c) offense, the presumption of mens rea applies in this case.
The majority opinion alternatively concludes that the presumption of mens rea applies to some elements of the offense, but not to others. In particular, the majority opinion states that the presumption of mens rea applies only when necessary to avoid criminalizing apparently innocent conduct — that is, when the conduct would be innocent if the facts were as the defendant believed. But the Supreme Court has never limited the presumption of mens rea in that fashion. The presumption of mens rea applies to each element of the offense. The presumption applies both when necessary to avoid criminalizing apparently innocent conduct (when the defendant would be innocent if the facts were as the defendant believed) and when necessary to avoid convicting the defendant of a more serious offense for apparently less serious criminal conduct (that is, when the defendant would receive a less serious criminal sanction if the facts were as the defendant believed).
In trying to cabin the presumption of mens rea so that it applies only when necessary to avoid criminalizing apparently innocent conduct, the majority opinion resurrects the Government’s argument in the recent Flores-Figueroa v. United States case. But the Government’s submission garnered zero votes in the Supreme Court. See 556 U.S. 646, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009). With good reason. It would be illogical in the extreme to apply the presumption of mens rea to an element of the offense that would, say, increase the defendant’s punishment from no prison time to a term of 2 years in prison, but not to apply the presumption of mens rea to an element of the offense that would aggravate the defendant’s crime and increase the punishment from 10 years to 30 years. As Professor LaFave has crisply stated, such an approach would be “unsound, and has no place in a rational system of substantive criminal law.” Wayne R. LaFave, Criminal Law 305 (5th ed.2010).[2]
In my view, the majority opinion is seriously mistaken because it does not properly account for the twin lines of Supreme Court precedent that dictate the result here: The presumption of mens rea applies to each element of the offense, and the automatic character of the gun is an element of the Section 924(c) offense. Twenty extra years of mandatory imprisonment hangs in the balance. I respectfully but emphatically dissent.
I
Criminal liability traditionally requires both a guilty act and a guilty mind, referred to as actus reus and mens rea. This case concerns mens rea. We separately analyze the mens rea requirements of a criminal statute for each element of the offense. See United States v. Bailey, 444 U.S. 394, 406, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (“Clear analysis requires that the question of the kind of culpability required to establish the commission of an offense be faced separately with respect to each material element of *530 the crime.”) (quoting Model Penal Code) (brackets omitted).[3]
An element of an offense is said to impose strict liability if it does not require any proof of the defendant’s mens rea (i.e., mental state) for that element. Cf. Staples v. United States, 511 U.S. 600, 607 n. 3, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). Strict liability means that the defendant’s ignorance or mistake of fact does not relieve the defendant of criminal liability. For example, consider a statute that criminalizes possession of stolen property. Under strict liability, a defendant would be guilty even if he genuinely did not know that the property he possessed was stolen (or that he possessed it at all). Or consider a statute , that criminalizes fishing in prohibited areas. Under strict liability, a defendant would be guilty even if she genuinely did not realize that she was fishing in a prohibited area. Or consider an example the Supreme Court gave in Staples. Congress might make it a crime to operate a car with emissions above a certain limit. Under strict liability, a defendant would be guilty even if his “vehicle’s emissions levels, wholly unbeknownst to him, began to exceed legal limits between regular inspection dates.” Id. at 614, 114 S.Ct. 1793.
Strict liability in criminal law is harsh and in serious tension with deeply rooted principles of justice and responsibility. See United States v. O’Mara, 963 F.2d 1288, 1293 (9th Cir.1992) (Kozinski, J., concurring). As a result, strict liability is extremely disfavored in the criminal laws of the United States. One commentator described the objection to strict liability for individual criminal punishment in words that have been often repeated:
The consensus can be summarily stated: to punish conduct without reference to the actor’s state of mind is both inefficacious and unjust. It is inefficacious because conduct unaccompanied by an *531 awareness of the factors making it criminal does not mark the actor as one who needs to be subjected to punishment in order to deter him or others from behaving similarly in the future, nor does it single him out as a socially dangerous individual who needs to be incapacitated or reformed. It is unjust because the actor is subjected to the stigma of a criminal conviction without being morally blameworthy. Consequently, on either a preventive or a retributive theory of criminal punishment, the criminal sanction is inappropriate in the absence of mens rea.
Herbert L. Packer, Mens Rea and the Supreme Court, 1962 Sup.Ct. Rev. 107, 109.
The fundamental question we confront here is how to interpret federal criminal statutes that are silent about mens rea. Like many federal criminal statutes, Section 924(c) does not expressly require proof of the defendant’s mens rea for this offense. In particular, the statute does not expressly require proof that the defendant, knew the weapon was automatic in order for the defendant to be convicted of the automatic weapon offense in Section 924(c).
The ordinary approach to statutory interpretation requires that we adhere to the text of the statute. See, e.g., Milner v. Dep’t of the Navy, — U.S. -, 131 S.Ct. 1259, 179 L.Ed.2d 268 (2011); Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). At first blush, therefore, one might think courts should hold that there is strict liability whenever a statute is silent about mens rea — and thus that there is strict liability for all the elements of the Section 924(c) offense. Under that scenario, the Government wouldn’t have to prove that the defendant in a Section 924(c) case even knew he had a gun — much less knew the gun was an automatic — in order to convict him of this Section 924(c) offense.
But the Supreme Court interprets statutes in light of traditional canons of construction. To take two well-known examples, the Supreme Court has long applied a presumption against extraterritoriality and a presumption against retroactivity. See, e.g., Morrison v. National Australia Bank Ltd., — U.S. -, 130 S.Ct. 2869, 2877-78, 177 L.Ed.2d 535 (2010) (Scalia, J., for the Court) (extraterritoriality); Landgraf v. USI Film Products, 511 U.S. 244, 265-68, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (retroactivity); id. at 286-88, 114 S.Ct. 1483 (Scalia, J., concurring in judgment) (retroactivity).
Similarly, the Supreme Court has long applied a presumption of mens rea for criminal statutes. See, e.g., Staples, 511 U.S. at 605-06, 114 S.Ct. 1793 (Thomas, J., for the Court). Like other traditional canons, the presumption of mens rea constitutes a sturdy background principle against which Congress legislates and against which courts interpret statutes.[4]
The presumption of mens rea applied by the Supreme Court stands on a bedrock historical foundation. The American legal tradition, as well as the English common-law tradition-'on which it was built, has long required proof of the defendant’s mens rea as a pre-condition for imposing criminal liability. The “existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.” Id. at 605, 114 S.Ct. 1793 (citation omitted); see *532 1 Joel Prentiss Bishop, Commentaries on the Criminal Law § 227 (2d ed. 1858) (“the essence of an offence is the wrongful intent, without which it cannot exist”); 4 William Blackstone, Commentaries *21 (1769) (“to constitute a crime against human laws, there must be, first, a vicious will”); 3 Edward Coke, Institutes of the Laws of England 6, 107 (London, E. & R. Brooke 1797) (1644) {“actus non facit reum, nisi mens sit rea ”; that is, an act does not make a person guilty unless the mind is guilty); Francis Bacon, The Elements of the Common Lawes of England 65 (London, I. More 1630) (1596) (“All crimes have their conception in a corrupt intent”).[5]
The Supreme Court added to that historical foundation when it decided the landmark case of Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). Morissette had taken what he thought were abandoned bomb casings from uninhabited land in rural Michigan. Turned out that the casings were government property. The Government charged Morissette with illegally converting (that is, taking and disposing of) government property even though he had thought the casings were abandoned. The relevant statute provided: “Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another ... any record, voucher, money, or thing of value of the United States” shall be punished by fine or imprisonment. 18 U.S.C. § 641 (1952); see Morissette, 342 U.S. at 248 n. 2, 72 S.Ct. 240. The word “knowingly” in its isolated position suggested that it attached only to the verb “converts,” and not to the fact that the property belonged to someone else (there, the Government).
The Government argued that federal criminal statutes are to be read literally and that Morissette was therefore guilty even if he truly thought that the casings were abandoned. When a statute does not explicitly contain a mens rea requirement, there is none — or so the Government argued.
The Morissette Court held otherwise: Such “adoption of the literal reasoning ... would sweep out of all federal crimes, except when expressly preserved, the ancient requirement of a culpable state of mind”— a result that would be “inconsistent with our philosophy of criminal law.” 342 U.S. at 250, 72 S.Ct. 240. The Court invoked the background presumption of mens rea to conclude that the term “knowingly” also required proof that the defendant knew that the property belonged to someone else.
Justice Jackson authored the Court’s opinion in Morissette. Justice Jackson was of course “intimately familiar with the corruption of the criminal process in a totalitarian society.” Packer, Mens Rea and the Supreme Court, 1962 Sup.Ct. Rev. at 119. And in Morissette, Justice Jackson forcefully described the critical link between human liberty and mens rea requirements. He explained that mens rea in criminal law “is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.” *533 342 U.S. at 250, 72 S.Ct. 240. The concept, indeed, “is almost as instinctive as the child’s' familiar exculpatory ‘But I didn’t mean to.’ ” Id. at 251, 72 S.Ct. 240.
Although some might have thought Morissette’s case “profoundly insignificant,” Justice Jackson recognized the “fundamental and far-reaching” mens rea issues at stake. Id. at 247, 72 S.Ct. 240. Justice Jackson saw the wolf in sheep’s clothing: “The Government asks us by a feat of construction radically to change the weights and balances in the scales of justice. The purpose and obvious effect of doing away with the requirement of a guilty intent is to ease the prosecution’s path to conviction, to strip the defendant of such benefit as he derived at common law from innocence of evil purpose, and to circumscribe the freedom heretofore allowed juries.” Id. at 263, 72 S.Ct. 240.[6]
Under the traditional presumption of mens rea as expounded by Morissette, courts presume a mens rea requirement for each element of the offense unless Congress plainly indicates otherwise. See id. at 254 n. 14, 72 S.Ct. 240 (presumption may be overridden by “clear command” from Congress).[7]
II
The Supreme Court’s case law since Morissette illustrates the force and breadth of the presumption of mens rea. The Court has applied the presumption to statutes that are silent about mens rea. The Court has likewise applied the presumption to statutes that contain a mens rea requirement for one element but are silent or ambiguous about mens rea for other elements. '
A detailed review of those precedents demonstrates that the majority opinion in this case has jumped the rails.
Following Morissette, the Supreme Court again stressed the importance of the presumption of mens rea in United States v. U.S. Gypsum Co., 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). The case concerned criminal liability under the Sherman Antitrust Act. The text of the *534 Sherman Act supplied no express mens rea requirement. But the Court relied on Morissette and said that it was “unwilling to construe the Sherman Act as mandating a regime of strict-liability criminal offenses.” Id. at 436, 98 S.Ct. 2864.
As in Morissette, the Court in U.S. Gypsum grounded the presumption in history and tradition. The Court recounted “the familiar proposition that the existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.” Id. (internal quotation marks and brackets omitted). Invoking that background principle, the Court explained that it had “on a number of occasions read a state-of-mind component into an offense even when the statutory definition did not in terms so provide.” Id. at 437, 98 S.Ct. 2864 (emphasis added). “Certainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement.” Id. at 438, 98 S.Ct. 2864. Indeed, the Court read Morissette “as establishing, at least with regard to crimes having their origin in the common law, an interpretative presumption that mens rea is required.” Id, at 437, 98 S.Ct. 2864.[8] The Court stated, moreover, that the presumption was strengthened by the severity of the sanctions under the Sherman Act — a maximum of 3 years’ imprisonment. See id. at 442 n. 18, 98 S.Ct. 2864.
In United States v. Bailey, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980), the Court applied the presumption to a statute punishing prison escape. The law required the Government to prove that the prisoner had escaped from custody. The statute did not contain any express mens rea requirement, raising this question: Could a prisoner be convicted of escape even if he genuinely but mistakenly thought he had permission to leave — on a work detail, for example? The Court embarked on an “element-by-element analysis,” “dissecting” the statute and “assigning a level of culpability to each element.” Id. at 406, 100 S.Ct. 624. Reiterating that the omission of mens rea “does not mean, of course,” that the statute “defines a ‘strict liability’ crime for which punishment can be imposed without proof of any mens rea at all,” the Court required proof of knowledge — proof that “an escapee knew his actions would result in his leaving physical confinement without permission.” Id. at 406 n. 6, 408, 100 S.Ct. 624. In other words, a defendant who genuinely but mistakenly thought he had permission to leave could not be convicted under the statute.
In Posters ‘N’ Things, Ltd. v. United States, 511 U.S. 513, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994), the statute provided: “It is unlawful for any person ... to make use of the services of the Postal Service or other interstate conveyance as part of a scheme to sell drug paraphernalia....” 21 U.S.C. § 857(a) (1988); see 511 U.S. at 516, 114 S.Ct. 1747. The statute was silent as to mens rea. So the question arose: Did the Government have to prove that the defendant knew the possessed materials— a scale and pipe, for example — were drug paraphernalia likely to be used with illegal drugs? The Court said yes. “Certainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing *535 with an intent requirement.” 511 U.S. at 522, 114 S.Ct. 1747 (citation omitted). Applying the presumption of mens rea, the Court held that the statute “requires the Government to prove that the defendant knowingly made use of an interstate conveyance as part of a scheme to sell items that he knew were likely to be used with illegal drugs.” Id. at 524, 114 S.Ct. 1747 (emphases added).
The Court’s decision that same Term in Staples v. United States, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), is particularly instructive here. The statute at issue in Staples provided only: “It shall be unlawful for any person ... to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record.... ” 26 U.S.C. § 5861 (1994); see 511 U.S. at 605, 114 S.Ct. 1793. The statutory definition of “firearm” included automatic weapons, but not semiautomatic weapons. See 511 U.S. at 602-04, 615, 114 S.Ct. 1793. The statute contained no express mens rea requirement.
The question in Staples — very similar to the question in our ease — was whether the Government had to prove that the defendant knew the gun was an automatic. The Court said yes. The Court cited “the background rule of the common law favoring mens rea” and noted that the rule applies to statutory criminal offenses. Id. at 605-06, 619, 114 S.Ct. 1793. According to the Court, “some indication of congressional intent” to dispense with mens rea is necessary before a court will find strict liability. Id. at 606, 114 S.Ct. 1793. The Court stated: “Silence does not suggest that Congress dispensed with mens rea” for the automatic weapon element. Id. at 619, 114 S.Ct. 1793. The Court also pointed out that the sentence involved — a statutory maximum of 10 years’ imprisonment — further supported requiring proof of mens rea. See id. at 616-19, 114 S.Ct. 1793. As for what level of mens rea was required, “knowledge” of “the facts that make his conduct fit the definition of the offense” would suffice “to establish mens rea.” Id. at 608 n. 3, 114 S.Ct. 1793. Therefore, “to obtain a conviction, the Government should have been required to prove that” the defendant “knew of the features of his AR-15 that brought it within the scope of the Act” — that is, knew that the gun was an automatic. Id. at 619, 114 S.Ct. 1793.
In Carter v. United States, 530 U.S. 255, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000), the law in question punished taking bank property either by force and violence or by intimidation. See id. at 259, 120 S.Ct. 2159. The relevant subsection of the statute had no express mens rea requirement. Of course, it’s hard to imagine unknowingly taking property by force and violence or by intimidation. But even so, the Court still required proof of the defendant’s knowledge because the statute “should not be interpreted to apply to the hypothetical person who engages in forceful taking of money while sleepwalking (innocent, if aberrant activity).” Id. at 269, 120 S.Ct. 2159.
In its long line of mens rea precedents, the Court has applied the presumption of mens rea not just to statutes that are silent about mens rea (such as those just discussed), but also to statutes that contain a mens rea requirement for one element but are silent or ambiguous about mens rea for other elements.
In Liparota v. United States, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), for example, the Court considered a statute providing that “whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by this chapter or the regulations” shall be fined or im *536 prisoned. 7 U.S.C. § 2024(b)(1) (1982); see 471 U.S. at 420 n. 1, 105 S.Ct. 2084. The Court had to decide how far the term “knowingly” traveled down the sentence. Did the defendant need to know that his use of food stamps was unauthorized? The Court stated that the statutory text provided “little guidance” and that either interpretation “would accord with ordinary usage.” 471 U.S. at 424, 105 S.Ct. 2084. Based on the presumption of mens rea, the Court concluded: “Absent indication of contrary purpose in the language or legislative history of the statute, we believe that § 2024(b)(1) requires a showing that the defendant knew his conduct to be unauthorized by statute or regulations.” Id at 425, 105 S.Ct. 2084.
In United States v. X-Citement Video, Inc., 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994), the Court followed a similar path. The Court there interpreted a statute targeting distribution of child pornography. The Court had to decide whether the statutory mens rea “knowingly’ applied not just to the transport of a pornographic video or photo but also to the fact that a girl or boy under age 18 appeared in the video or photo. See id. at 68, 115 S.Ct. 464. As the Court acknowledged, the “most natural grammatical reading” of the statute suggested that the mens rea requirement did not apply to the fact that a girl or boy under 18 was shown in the video or photo. Id. But the Court rejected that plain-text reading as inconsistent with the presumption of mens rea. The Court instead required proof that the defendant knew that a girl or boy under 18 was depicted. See id. at 70, 78, 115 S.Ct. 464.
The Court’s recent decision in Flores-Figueroa v. United States, 556 U.S. 646, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009), adhered to much the same approach. The statute at issue in Flores-Figueroa applied to a person who — while committing a listed predicate crime — “knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person.” 18 U.S.C. § 1028A; see 129 S.Ct. at 1888-89. The Court decided that “knowingly” applied not just to the fact of the defendant’s possession or use of the fake identification card but also to the fact that the identity on the card was “of another person.” The Court reached its decision by relying in part on the presumption of mens rea, which in that case meant a strong default rule of statutory interpretation that applies when there is an express mens rea as to one element of the offense: “The manner in which the courts ordinarily interpret criminal statutes is fully consistent with this ordinary English usage. That is to say courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word ‘knowingly’ as applying that word to each element.” 129 S.Ct. at 1891. The Court further explained that its decision was consistent with precedents, such as Liparota and X-Citement Video, that had applied the presumption of mens rea to similar statutory schemes. See id. In justifying its conclusion, the Court asked rhetorically: “Would we apply a statute that makes it unlawful ‘knowingly to possess drugs’ to a person who steals a passenger’s bag without knowing that the bag has drugs inside?” Id at 1890.
Justice Alito’s concurrence in Flores-Figueroa concisely summarized the presumption of mens rea applied by the Court, and added that the presumption was of course not conclusive and could be overcome by context in certain circumstances: “In interpreting a criminal statute such as the one before us, I think it is fair to begin with a general presumption that the specified mens rea applies to all the elements of an offense, but it must be recognized that there are instances in *537 which context may well rebut that presumption .... I therefore concur in the judgment and join the opinion of the Court except insofar as it may be read to adopt an inflexible rule of construction that can rarely be overcome by contextual features pointing to a contrary reading.” Id. at 1895-96 (Alito, J., concurring in part and concurring in judgment).[9]
The Supreme Court’s case law demonstrates that the Court has applied the presumption of mens rea consistently, forcefully, and broadly. The presumption applies to statutes that are silent as to mens rea. See Morissette, 342 U.S. 246, 72 S.Ct. 240; U.S. Gypsum, 438 U.S. 422, 98 S.Ct. 2864; Bailey, 444 U.S. 394, 100 S.Ct. 624; Posters W Things, 511 U.S. 513, 114 S.Ct. 1747; Staples, 511 U.S. 600, 114 S.Ct. 1793; Carter, 530 U.S. 255, 120 S.Ct. 2159. The presumption also applies to statutes that contain an explicit mens rea requirement for one element but are silent or ambiguous about mens rea for other elements. See Morissette, 342 U.S. 246, 72 S.Ct. 240; Liparota, 471 U.S. 419, 105 S.Ct. 2084; X-Citement Video, 513 U.S. 64, 115 S.Ct. 464; Flores-Figueroa, 556 U.S. 646, 129 S.Ct. 1886. And whether the statute is completely silent as to mens rea, or only partially silent, the presumption applies to each element of the offense. Recall that in Posters ‘N’ Things, for example, the statute said simply: “It is unlawful for any person ... to make use of the services of the Postal Service or other interstate conveyance as part of a scheme to sell drug paraphernalia....” 21 U.S.C. § 857(a) (1988); see 511 U.S. at 516, 114 S.Ct. 1747. The statute contained no express mens rea requirement. The Court held that the presumption of mens rea applied to each element of the offense, saying the statute “requires the Government to prove that the defendant knowingly made use of an interstate conveyance as part of a scheme to sell items that he knew were likely to be used with illegal drugs.” 511 U.S. at 524, 114 S.Ct. 1747 (emphases added).
To sum up so far, the Supreme Court has established and applied a rule of statutory interpretation for federal crimes: A requirement of mens rea applies to each element of the offense unless Congress has plainly indicated otherwise.[10]
*538 III
We thus far have established that the presumption of mens rea applies to each element of the offense. To use the presumption of mens rea correctly, we must keep in mind a critical distinction: The presumption of mens rea applies to elements of the offense, but not to sentencing factors.
An element of the offense is a “fact necessary to constitute the crime.” Almendarez-Torres v. United States, 523 U.S. 224, 240, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (citation omitted). “Characteristics of the offense itself are traditionally treated as elements.... ” United States v. O’Brien, — U.S. -, 130 S.Ct. 2169, 2176, 176 L.Ed.2d 979 (2010).
By contrast, a sentencing factor is a fact that is not necessary to define the crime but that typically is used by a sentencing court to increase punishment. See Almendarez-Torres, 523 U.S. at 228, 118 S.Ct. 1219. “Sentencing factors traditionally involve characteristics of the offender — such as recidivism, cooperation with law enforcement, or acceptance of responsibility.” O’Brien, 130 S.Ct. at 2176.
As the Supreme Court has recognized: “Much turns on the determination that a fact is an element of an offense rather than a sentencing” factor. Jones v. United States, 526 U.S. 227, 232, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); see also McMillan v. Pennsylvania, 477 U.S. 79, 84-86, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). For example, under the Fifth and Sixth Amendments, an element of the offense “must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt.” Jones, 526 U.S. at 232, 119 S.Ct. 1215. By contrast, a sentencing factor need not be charged in the indictment, submitted to a jury, or proved by the Government beyond a reasonable doubt. See id.
As to the presumption of mens rea, the Supreme Court has long stated that an element of the offense triggers the presumption of mens rea. See, e.g., Staples v. United States, 511 U.S. 600, 606-07 & n. 3, 619, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). By contrast, as the Supreme Court indicated in Dean v. United States, a sentencing factor does not trigger the presumption of mens rea. 556 U.S. 568, 129 S.Ct. 1849, 173 L.Ed.2d 785 (2009); see also O’Brien, 130 S.Ct. at 2179, 2180 (expressly describing Dean as a case about “sentencing factors”).
In Dean, the Court resolved a circuit split that had arisen over whether the presumption of mens rea applies to sentencing factors. The Court concluded that the presumption does not apply to sentencing factors. Justice Stevens vigorously dissented and lamented the distinction the Court had drawn between elements of the offense and sentencing factors for the presumption of mens rea: “Although mandatory minimum sentencing provisions are of too recent genesis to have any common-law pedigree, there is no sensible reason for treating them differently from offense elements for purposes of the presumption *539 of mens rea. Sentencing provisions of this type have substantially the same effect on a defendant’s liberty as aggravated offense provisions.... The common-law tradition of requiring proof of mens rea to establish criminal culpability should thus apply equally to such sentencing factors.” 129 S.Ct. at 1858 (Stevens, J., dissenting) (citation omitted).[11]
The distinction that the Court has drawn between elements of the offense and sentencing factors derives in part from the Court’s traditional view of sentencing as a more flexible, open-ended proceeding that takes account of a wide variety of circumstances. Cf. Pepper v. United States, — U.S. -, 131 S.Ct. 1229, 1235, 179 L.Ed.2d 196 (2011) (“sentencing judges exercise a wide discretion in the types of evidence they may consider when imposing sentence”) (internal quotation marks omitted); Williams v. New York, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (“courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used”).
To be sure, as indicated by Justice Stevens’s dissent in Dean, some Justices continue to voice weighty arguments that the protections attached to elements of the offense — including Fifth and Sixth Amendment rights, as well as the presumption of mens rea — should also attach to sentencing factors. According to those Justices, there is little if any difference in certain modern criminal statutes between the facts labeled as elements and the facts labeled as sentencing factors. And in the view of those Justices, the Court has allowed legislatures to too broadly deploy the “sentencing factor” label and thereby evade the protections, including the presumption of mens rea, that attach to elements of the offense. See O’Brien, 130 S.Ct. at 2181-83 (Stevens, J., concurring); id. at 2183-84 (Thomas, J., concurring in judgment); Dean, 129 S.Ct. at 1857-60 (Stevens, J., dissenting); Harris v. United States, 536 U.S. 545, 572-83, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (Thomas, J., dissenting); Monge v. California, 524 U.S. 721, 737-41, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998) (Scalia, J., dissenting); McMillan, 477 U.S. at 93-94, 106 S.Ct. 2411 (Mar *540 shall, J., dissenting); id. at 95-104, 106 S.Ct. 2411 (Stevens, J., dissenting).
But that continuing argument about adding protections for sentencing factors is not relevant here. That’s because, as I will explain now, this case indisputably concerns an element of the offense, which in turn means that the presumption of mens rea indisputably applies.
IV
As the preceding discussion reveals, deciding whether the presumption of mens rea applies in this case turns on the following question: Is the automatic character of the weapon an element of the Section 924(c) offense, or is it a sentencing factor? [12]
Determining whether a particular fact is an element of the offense or a sentencing factor can be difficult in some eases. In this case, however, the question is not difficult because the Supreme Court has already answered it.[13]
In its 2010 decision in United States v. O’Brien, the Court unanimously concluded that a firearm’s automatic character is an element of the Section 924(c) offense as written and intended by Congress — and not a sentencing factor. — U.S. -, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010). The question there concerned whether the Government had to prove the fact that the weapon was automatic to a jury beyond a reasonable doubt. See id. at 2173-74. The O’Brien Court said yes, because the automatic character of the weapon is an element of the Section 924(c) offense. The Court reasoned that the nature of the weapon was a characteristic of the offense, and characteristics of the offense “are traditionally treated as elements.” Id. at 2176. In addition, the Court explained that the “drastic” increase in the minimum sentence when the firearm is automatic “strongly suggests a separate substantive crime,” not merely a sentencing factor. Id. at 2177.[14] The Court in O’Brien thus concluded that the automatic character of the gun is an element of the Section 924(c) offense.[15]
*541 Because the automatic character of the gun is an element of the offense, and because the presumption of mens rea applies to each element of the offense, the presumption of mens rea applies here. We therefore must presume that the Section 924(c) offense requires the Government to prove that the defendant knew his gun was automatic.
V
The majority opinion avoids the presumption of mens rea by treating the automatic character of the gun as if it’s a sentencing factor rather than an element of the offense. That is apparent from the majority opinion’s repeated invocation of the Supreme Court’s decision in Dean v. United States, a sentencing factor case. 556 U.S. 568, 129 S.Ct. 1849, 173 L.Ed.2d 785 (2009).
The fundamental problem for the majority opinion is that the decision in Dean addressed a sentencing factor — namely, discharge of the firearm — and not an element of the offense. The Supreme Court itself has referred to Dean as a case about “sentencing factors.” United States v. O’Brien, — U.S. -, 130 S.Ct. 2169, 2179, 2180, 176 L.Ed.2d 979 (2010). In the predecessor case to Dean, the Supreme Court likewise held that discharge of the firearm during the crime was a “sentencing factor,” not an element of the offense. Harris v. United States, 536 U.S. 545, 552, 556, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002).
Because the Supreme Court concluded that discharge of the firearm was a sentencing factor and not an element of the offense, the presumption of mens rea did not apply in Dean. The Dean Court therefore determined that the Government need not prove that the defendant intended to discharge the firearm.
By contrast, as the Supreme Court held in O’Brien, the automatic character of the gun is an element of the offense. As a result, the presumption of mens rea applies in this case.
To rely on Dean here — as the majority opinion does relentlessly — is to miss the boat on the crucial distinction between sentencing factors and elements of the offense for purposes of the presumption of mens rea.
For the same reason, the majority opinion’s reliance on this Court’s 1992 decision in United States v. Harris, 959 F.2d 246 (D.C.Cir.1992), is misplaced. Harris said that the automatic character of a gun was a “sentence enhancement”; therefore, the Court did not require proof that the defendant knew the gun was automatic. Id. at 259. In United States v. Brown, more *542 over, we specifically described Harris as a sentencing factor case: “The government also relies on United States v. Hams, where we analyzed a part of § 924(c)(1) that imposes a 30-year minimum when the weapon used is a machine gun. Assuming that this created .a sentencing factor, we found that the government didn’t need to prove that the defendant knew the precise nature of the weapon he used.... ” 449 F.3d 154, 157-58 (D.C.Cir.2006) (citations omitted).
The determination made in Harris and reiterated in Brown — that the automatic character of the gun is a sentencing factor — has been undermined by the Supreme Court’s decision in O'Brien. In O’Brien, to repeat, the Supreme Court expressly ruled that the automatic character of the gun is an element of the Section 924(c) offense, not a sentencing factor. See 130 S.Ct. 2169. The Supreme Court’s decision in O’Brien thus knocked out the fundamental underpinnings of this Court’s decision in Harris.[16]
Moreover, in concluding that the Government did not need to prove that the defendant knew the automatic character of the gun, Harris reasoned that “there does not seem to be a significant difference in mens rea between a defendant who commits a drug crime using a pistol and one who commits the same crime using a machine gun; the act is different, but the mental state is equally blameworthy.” 959 F.2d at 259. But in O’Brien, the Supreme Court directly rejected that line of reasoning, stating that the dramatically enhanced sanctions in Section 924(c) for carrying an automatic weapon reflect “the moral depravity in choosing the weapon.” 130 S.Ct. at 2178. O’Brien thus rejected not only the sentencing factor label that Harris used, but also the reasoning that Harris employed. For that reason as well, Harris has been undermined by the Supreme Court on the question whether the presumption of mens rea applies to the automatic character of the gun in a Section 924(c) case.[17]
*543 VI
The majority opinion alternatively asserts that the presumption of mens^ rea applies only to some elements of the offense — namely, only to those elements that are “essential.” See Maj. Op. at 503, 505-07. Under the majority opinion’s approach, the presumption applies only when proof of mens rea is necessary to avoid criminalizing apparently innocent conduct — that is, when the defendant would be innocent if the facts were as the defendant believed. Under the majority opinion’s theory, the presumption does not apply when proof of mens rea is necessary to avoid convicting a defendant of a more serious offense for apparently less serious criminal conduct — that is, when the defendant would receive a less serious criminal sanction if the facts were as he believed.
But where does the majority opinion find that limitation on the presumption of mens rea? The Supreme Court has never drawn such a distinction when employing the presumption of mens rea.
To be sure, the Supreme Court has said that the presumption of mens rea is important when the defendant otherwise may have been innocent of any wrongdoing. See, e.g., Staples v. United States, 511 U.S. 600, 610, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (Court has taken “particular care” to avoid criminalizing apparently innocent conduct). But the Court has never cabined the presumption of mens rea to those circumstances. As this Court said in United States v. Villanueva-Sotelo — a decision approved by the Supreme Court in Flores-Figueroa v. United States — the Supreme Court has found it “particularly appropriate to extend a mens rea requirement when failure to do so would result in a statute criminalizing nonculpable conduct,” but “the Court has never held that avoiding such a result is the only reason to do so.” 515 F.3d 1234, 1242 (D.C.Cir.2008) (internal quotation marks omitted). ■ The majority opinion here is thus trying to confine the presumption of mens rea in a way that the Supreme Court has never done.
Moreover, it would be incoherent to limit the presumption of mens rea to only those cases where it’s necessary to avoid criminalizing what the defendant thought was innocent conduct. The key trigger for the presumption of mens rea is whether the fact at issue is an element of the offense. If a fact is an element of the offense and not a sentencing factor, the presumption applies. And the presumption applies both when necessary to avoid criminalizing apparently innocent conduct and when necessary to avoid convicting of a more serious offense for apparently less serious criminal conduct. As Professor LaFave has explained, rules of mens rea apply both to a defendant who is unaware of the facts that make his conduct criminal and to a defendant who is “unaware of the magnitude of the wrong he is doing.” Wayne R. LaFave, Criminal Law 304 (5th ed.2010). The idea that “the mistake by the defendant may be disregarded because of the fact that he actually intended to do some legal or moral wrong” is — in Professor LaFave’s words — “unsound, and has no place in a rational system of substantive criminal law.” Id. at 304-05; see also Glanville Williams, Criminal Law: The General Part 185-99 (2d ed.1961).
Taking a step back: What sense would it make to have a presumption of mens rea for an element of the offense that increases the defendant’s mandatory minimum punishment from no prison time to a term of 2 years’ imprisonment, for example, but not to have a presumption of mens rea for an element of the offense that aggravates the defendant’s offense and elevates the defendant’s mandatory minimum punishment from 10 years to 30 years? The *544 answer is that it would make no sense at all: “After all, a comparable degree of inequity exists in (1) punishing a person who, but for the strict liability application to the element, would have received zero punishment (the ‘innocent’ case protected by X-Citement Video) and (2) punishing with more years of imprisonment a person who, but for the strict liability application to the element, would still have received substantial punishment.” Leonid Traps, “Knowingly” Ignorant: Mens Rea Distribution in Federal Criminal Law After Flores-Figueroa, 112 Colum. L.Rev. 628, 661 (2012).
The majority opinion retorts that we are not confronted with “an altar boy who made an innocent mistake.” Maj. Op. at 507 (citation and brackets omitted). But the fact that the defendant is a “bad person” who has done “bad things” does not justify dispensing with the presumption of mens rea in this fashion and imposing 20 years of additional mandatory prison time. An example helps illustrate that point: If an altar boy steals the collection bag, he is guilty of larceny. If the bag also happens to contain a stash of cocaine sewn into the lining, but the altar boy did' not know about the hidden drugs, he should not be guilty of drug possession. In other words, the fact that he is guilty of larceny doesn’t justify rendering him guilty of possessing drugs, at least absent some plain indication of legislative intent to eliminate a mens rea requirement. Yet the majority opinion’s approach here would mean that the altar boy in that hypothetical scenario is indeed guilty of both larceny and drug possession.
When the facts as the defendant believed them would have warranted conviction of a lesser offense and called for a lesser punishment, no legitimate purpose of criminal law — whether it be retribution, deterrence, or rehabilitation — is served by convicting him of an aggravated offense and imposing a more severe punishment.
The Supreme Court’s recent decision in Flores-Figueroa underscores that the presumption of mens rea applies not just when the presumption is necessary to avoid criminalizing apparently innocent conduct, but also when the presumption is necessary to avoid convicting a defendant of a more serious offense for apparently less serious conduct.[18]
Recall that the statute in Flores-Figueroa punished someone who “knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person” while committing an enumerated predicate crime. 18 U.S.C. § 1028A; see 129 S.Ct. 1886, 1888-89 (2009). The question was whether the Government had to prove that the defendant knew the identification card contained the identity of another actual person (as opposed to thinking that the identification card merely contained the identity of a made-up person). Because the statute applied only to those who had committed a predicate crime and who had illegally used a fake ID card, proof that the defendant knew’the identification card contained the identity of another actual person was not necessary to avoid criminalizing apparently innocent conduct. The Government argued that it therefore should not have to prove that the defendant knew the card contained the identity of another actual person.
No Justice on the Court accepted the Government’s argument that the presumption of mens rea applies only when necessary to avoid criminalizing apparent *545 ly innocent conduct. Indeed, the Court specifically rejected the Government’s argument that “the defendant’s necessary guilt of a predicate crime and the defendant’s necessary knowledge that he has acted ‘without lawful authority,’ make it reasonable” to “read the statute’s language as dispensing with the knowledge requirement.” Flores-Figueroa, 129 S.Ct. at 1893. The Court ruled that the Government still must prove the defendant knew the card contained the identity of another person, even though the defendant was already committing two other crimes — the predicate crime and the use of a fake ID card. The Court relied in part on the presumption of mens rea, described by the Court as a strong default rule of statutory interpretation: “The manner in which the courts ordinarily interpret criminal statutes is fully consistent with this ordinary English usage. That is to say courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word ‘knowingly’ as applying that word to each element.” Id. at 1891.[19]
As one respected commentary has explained: “Earlier cases had indicated that when a federal statute criminalizes otherwise innocent conduct, courts should interpret the mens rea requirement in the statute broadly. Some lower courts had taken this line of decisions to mean that when a federal criminal statute criminalizes behavior that would not be innocent in the absence of that statute, the mens rea requirement should be read to apply to fewer elements of the crime. In Flores-Figueroa, the Court corrected this misreading.” The Supreme Court, 2008 Term — Leading Cases, 123 Harv. L.Rev. 153, 317 (2009).
In trying to narrow the presumption of mens rea so that it applies only when necessary to avoid criminalizing apparently innocent conduct, the majority opinion echoes the Government’s failed submission in Flores-Figueroa. It is instructive to compare the Government’s position in Flores-Figueroa with the majority opinion’s analysis here.
In Flores-Figueroa, the Government tried to distinguish Morissette, U.S. Gypsum, Liparota, Staples, and X-Citement Video on the ground that those cases involved statutes that “criminalize conduct that might reasonably be viewed as innocent or presumptively lawful in nature.” Brief for the United States at 42-43, Flores-Figueroa, 556 U.S. 646, 129 S.Ct. 1886, 173 L.Ed.2d 853 (No. 08-108). The Government further contended that the Supreme Court’s mens rea precedents “should not be understood apart from the Court’s primary stated concern of avoiding criminalization of otherwise non-culpable conduct.” Id. at 18 (citation and brackets omitted). And the Government claimed that “the Court has interpreted the scope of a statutorily prescribed mens rea requirement against a background presumption that statutes should not generally be read as criminalizing apparently innocent conduct.” Id. at 40 (internal quotation marks omitted). The Supreme Court rejected those arguments wholesale.
Like the Government in Flores-Figueroa, the majority opinion here tries to dis *546 tinguish the relevant Supreme Court precedents on the ground that those cases “involved” statutes “that criminalized otherwise lawful behavior.” Maj. Op. at 506. The majority opinion concludes that the precedents’ “concerns animating the presumption in favor of mens rea ” — the “danger of ensnaring an altar boy who made an innocent mistake” — “simply are not present here.” Maj. Op. at 507 (internal quotation marks and brackets omitted). And the majority opinion says that the “Court developed the presumption in favor of mens rea for one particular reason: to avoid criminalizing otherwise lawful conduct.” Maj. Op. at 505.
The majority opinion is thus rehashing the same theory that the Government unsuccessfully advanced to the Supreme Court in Flores-Figueroa.[20]
Finally, it bears mention that even the majority opinion ultimately backs off its “apparently innocent conduct” limitation to the presumption of mens rea. Under the majority opinion’s theory, there should be no mens rea requirement for any of the elements of the Section 924(c) offense, including the carrying of the gun. After all, Section 924(c) applies only to someone who has committed a separate violent or drug trafficking crime. Requiring proof that the defendant (i) knew he was carrying an object and (ii) further knew that the object he was carrying was a gun is therefore not necessary to avoid criminalizing apparently innocent conduct. But realizing the harsh absurdities that could result from that conclusion — namely, that a 30-year mandatory minimum sentence could be imposed based on the presence of a gun that the defendant did not even know was there — the majority opinion retreats. The majority opinion concedes that Section 924(c) must be interpreted to require knowledge that the defendant was carrying a gun and knowledge that the object carried was a gun. See Maj. Op. at 503, 507. What that means is that the majority opinion itself actually ends up applying the presumption of mens rea in circumstances where it is not necessary to avoid criminalizing apparently innocent conduct. Given that concession, what is left of the majority opinion’s attempt to limit the presumption of mens rea to circumstances where the presumption is necessary to avoid criminalizing apparently innocent conduct? Not much. The majority opinion fashions a limitation on the presumption of mens rea that the Supreme Court has never applied and that was rejected in Flores-Figueroa, that we likewise rejected in Villanuevar-Sotelo, and that makes little sense under fundamental criminal law principles. And then the majority opinion — apparently recognizing that its theory generates harsh absurdities — carves out exceptions in an ad hoc manner that leaves its attempted limitation on the presumption of mens rea in shambles.
In sum, under Supreme Court precedent, the presumption of mens rea applies to each element of the offense, not just when necessary to avoid criminalizing apparently innocent conduct. Therefore, the presumption of mens rea applies to the automatic character of the weapon in Section 924(c) cases.
*547 VII
By now, we have cleared a lot of brush in determining that the presumption of mens rea applies to the automatic character of the weapon in Section 924(c) cases. Of course, the presumption of mens rea is a presumption; it thus may be overcome by a plainly contrary congressional intent, as revealed in the statutory text or context. Here, the presumption of mens rea is not overcome.[21]
To begin with, three aspects of Section 924(c) strongly reinforce the presumption of mens rea: the severity of the additional sentence for carrying an automatic gun; the difficulty of distinguishing an automatic gun from a semiautomatic gun; and the inconsistency that would otherwise be created with the Supreme Court’s decision in Staples, which required proof that the defendant knew the gun was automatic in order to convict him of possessing an unregistered automatic weapon.
First, the severe penalties at issue here support requiring proof of the defendant’s mens rea. The Supreme Court has repeatedly stated that “the penalty imposed under a statute has been a significant consideration in determining whether the statute should be construed as dispensing with mens rea.” Staples v. United States, 511 U.S. 600, 616, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). In X-Citement Video, the Court said that the “concern with harsh penalties looms equally large respecting § 2252.” United States v. X-Citement *548 Video, Inc., 513 U.S. 64, 72, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994). In U.S. Gypsum, the Court said: “The severity of these sanctions provides further support for our conclusion that the Sherman Act should not be construed as creating strict-liability crimes.” United States v. U.S. Gypsum Co., 438 U.S. 422, 442 n. 18, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). And in Morissette, the Court found larceny not to be a strict liability crime in part because “the penalty is high and, when a sufficient amount is involved, the infamy is that of a felony, which, says Maitland, is ‘as bad a word as you can give to man or thing.’ ” Morissette v. United States, 342 U.S. 246, 260, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (ellipsis omitted).
The “harsh penalties” in Staples and XCitement Video were statutory máximums of 10 years’ imprisonment. 513 U.S. at 72, 115 S.Ct. 464, 511 U.S. at 602-03, 114 S.Ct. 1793. The “sever[e]” sanction in U.S. Gypsum was a statutory maximum of 3 years’ imprisonment. 438 U.S. at 442 n. 18, 98 S.Ct. 2864. And the “high” penalty in Morissette was a statutory maximum of one year in prison. 342 U.S. at 248 & n. 2, 72 S.Ct. 240. The Supreme Court deemed those penalties sufficiently stringent to support a requirement of mens rea.
In this case, the additional imprisonment that turns on the automatic character of the gun is an extra 20 years; the extra 20 years is a mandatory minimum; and the resulting 30-year mandatory minimum sentence for this Section 924(c) offense must be served consecutively to (that is, in addition to) the sentence for the underlying robbery. The penalty at issue here is thus dramatically more severe than the penalties in those earlier Supreme Court mens rea eases. In the words of the Supreme Court, the extra 20 years of mandatory, consecutive prison time here is an “extreme sentencing increase.” United States v. O’Brien, — U.S. -, 130 S.Ct. 2169, 2178, 176 L.Ed.2d 979 (2010).
Congress could have decided that carrying either a semi-automatic or an automatic gun during a robbery is equally depraved and equally worthy of a 30-year mandatory sentence. Congress did not do so. It believed that carrying an automatic gun is far more serious and depraved, warranting an extra 20 years of mandatory prison time above that for carrying a semiautomatic gun. Almost a fortiori from the Supreme Court’s decisions in Staples, XCitement Video, U.S. Gypsum, and Morissette, the additional 20 years of mandatory prison time strongly supports requiring proof of mens rea — namely, proof that the defendant knew the automatic character of the gun.
Second, the difficulty of distinguishing an automatic gun from a semi-automatic gun supports requiring proof of mens rea. Automatic and semi-automatic guns may appear externally similar if not identical, as the Staples Court explained. See 511 U.S. at 615, 114 S.Ct. 1793. And “virtually any semiautomatic weapon may be converted, either by internal modification or, in some cases, simply by wear and tear,” into an automatic weapon. Id. The Supreme Court thus recognized that it is quite possible for someone who possesses an automatic weapon to “genuinely and reasonably” believe that he possesses “a conventional semi-automatic” weapon. Id. (citation omitted).[22]
*549 Third, requiring proof of mens rea is supported by the Supreme Court’s decision in Staples, which applied the presumption of mens rea in very similar circumstances. There, the Court considered a statute that criminalized possession of an unregistered automatic gun. The statute contained no express mens rea requirement. The Supreme Court applied the presumption of mens rea and required the Government to prove that the defendant knew that the gun was automatic.
The decision in Staples raises a straightforward question: If the presumption of mens rea applied in Staples to the gun’s automatic character, why shouldn’t it also apply here to the gun’s automatic character? The majority opinion offers no persuasive answer to that question.
So there are three significant textual and contextual factors that strongly reinforce the presumption of mens rea and support requiring proof that the defendant knew the automatic character of the gun. There is nothing in the statutory text or context that undermines the presumption of mens rea.
It is of course true, as the majority opinion notes, that “Section 924(c)(l)(B)(ii) is silent regarding a mens rea requirement.” Maj. Op. at 511. But as the Supreme Court has explained again and again, “mere omission from the statute of any mention of intent will not be construed as eliminating that element from the crimes denounced.” United States v. Bailey, 444 U.S. 394, 406 n. 6, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (quoting Morissette, 342 U.S. at 263, 72 S.Ct. 240) (brackets omitted). To state the obvious: If the presumption of mens rea were overcome by statutory silence, it would not be much of a presumption. But the presumption of mens rea is quite potent. Indeed, the Supreme Court has stated that statutes containing no express mens rea requirement still unambiguously contain a mens rea requirement. You read that correctly. See Staples, 511 U.S. at 619 n. 17, 114 S.Ct. 1793.
It is also true that other subsections in Section 924, as well as other statutes, expressly require a specific mens rea. Because Congress knows how to require mens rea and indeed has required it in other subsections, the majority opinion suggests that the omission of mens rea from the automatic weapon element in Section 924(c) must have been deliberate. But the Supreme Court has repeatedly rejected that approach to mens rea issues. For example, the statute in Morissette punished “[wjhoever embezzles, steals, purloins, or knowingly converts to his use or the use of another” anything owned by the United States. 18 U.S.C. § 641 (1952) (emphasis added); see 342 U.S. at 248 n. 2, 72 S.Ct. 240. Despite the explicit knowledge requirement for one element, the Court held that “mere omission” of a mens rea requirement for another element does not eliminate a mens rea requirement for that other element. 342 U.S. at 263, 72 S.Ct. 240. Similarly, in Carter v. United States, the Court faced parallel subsections of a bank robbery statute. While subsection (b) required “a specific ‘intent to steal or purloin,’ ” subsection (a) contained “no explicit mens rea requirement of any kind.” 530 U.S. 255, 267, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000). But once again, the Court refused to apply strict liability to subsection (a). Instead, relying on “the presumption in favor of scienter,” the Court “read subsection (a) as requiring *550 proof’ of the defendant’s knowledge. Id. at 268, 120 S.Ct. 2159. And in Posters ‘N’ Things, Ltd. v. United States, the Court interpreted a section of a statute — 21 U.S.C. § 857 (1988) — enacted as part of the Anti-Drug Abuse Act of 1986. See 511 U.S. 513, 516, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994). The adjacent section of the statute, enacted in the same Act, imposed an explicit knowledge requirement. See 21 U.S.C. § 856(a) (1988). Yet the Court still held that “the fact that Congress did not include the word ‘knowingly’ in the text of § 857” cannot “justif[y] the conclusion that Congress intended to dispense entirely with a scienter requirement.” Posters ‘N’ Things, 511 U.S. at 522, 114 S.Ct. 1747. Cf. Sackett v. EPA, — U.S. -, 132 S.Ct. 1367, 1373, 182 L.Ed.2d 367 (2012) (“if the express provision of judicial review in one section of a long and complicated statute were alone enough to overcome the APA’s presumption of reviewability for all final agency action, it would not be much of a presumption at all”).
In short, the Supreme Court’s precedents definitively establish that neither (i) silence on mens rea, nor (ii) the inclusion of a mens rea requirement in another statute, nor (iii) the inclusion of a mens rea requirement in another part of the same statute suffices to defeat the presumption of mens rea.
More broadly, the majority opinion suggests that the presumption of mens rea is overcome here because the purpose of Section 924(c) is to deter violent use of the most dangerous guns. But the goal of every criminal statute is to deter disfavored or dangerous activity. The purpose of deterring criminal activity has not justified dispensing with the presumption of mens rea for elements of the offense. See, e.g., Flores-Figueroa v. United States, 556 U.S. 646, 129 S.Ct. 1886, 1892, 173 L.Ed.2d 853 (2009) (“The question, however, is whether Congress intended to achieve this enhanced protection by permitting conviction of those who do not know the ID they unlawfully use refers to a real person, ie., those who do not intend to cause this further harm.”); Morissette, 342 U.S. at 259, 72 S.Ct. 240 (“Of course, the purpose of every statute would be ‘obstructed’ by requiring a finding of intent, if we assume that it had a purpose to convict without it.”).[23]
*551 In sum, the presumption of mens rea is not overcome in this statute. Indeed, the relevant textual and contextual considerations strongly support requiring proof of mens rea in this case. Therefore, the Government should have been required to prove the defendant’s mens rea — namely, to prove that the defendant knew the gun was automatic.
VIII
In seeking to limit the presumption of mens rea, the Government suggests that the presumption is not workable or practical for statutes like this one. That is wrong. The presumption of mens rea is eminently workable and practical.
First, the presumption of mens rea eliminates the need for difficult statute-by-statute inquiry into whether a particular statute requires proof of the defendant’s mens rea. The presumption of mens rea applies to each element of the offense in federal criminal statutes. A stable and consistently applied presumption of mens rea yields greater clarity and predictability for courts, prosecutors, and defendants. It saves resources that otherwise might be wasted in wrangling over whether a particular element warrants the presumption. It means that Congress need not go back and scour all existing statutes to ensure that mens rea was properly addressed. Nor need Congress worry that inadvertent ambiguity about mens rea will produce harsh and unintended results. The background principle is straightforward: Only a deliberately and plainly expressed choice by Congress will override the presumption of mens rea that attaches to elements of the offense. Cf. Morrison v. National Australia Bank Ltd., — U.S. -, 130 S.Ct. 2869, 2881, 177 L.Ed.2d 535 (2010) (“The results of judicial-speculation-made-law — divining what Congress would have wanted if it had thought of the situation before the court — demonstrate the wisdom of the presumption against extraterritoriality. Rather than guess anew in each case, we apply the presumption in all cases, preserving a stable background against which Congress can legislate with predictable effects.”).
Second, the presumption of mens rea avoids the significant constitutional questions that would arise if a defendant could be severely punished based on a fact the defendant did not know. If we followed the Government’s lead and read criminal statutes literally with respect to mens rea, we would have to open up an entire new body of constitutional mens rea law. See Lambert v. California, 355 U.S. 225, 228-30, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957); see also United States v. X-Citement Video, Inc., 513 U.S. 64, 78, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (cases “suggest that a statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts”); United States v. U.S. Gypsum Co., 438 U.S. 422, 437-38, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) (“While strict-liability offenses are not unknown to the criminal law and do not invariably offend constitutional requirements, the limited circumstances in which Congress has created and this Court has recognized such offenses attest to their generally disfavored status.”) (emphasis added) (citations omitted).
Third, the presumption of mens rea carefully balances the competing interests of the prosecution and the defense. The Government suggests that it would be impractical and unfair to the prosecution to require proof of the defendant’s mens rea in these circumstances. The Government has advanced such claims many times before. Yet the Supreme Court has re *552 peatedly stated that the presumption of mens rea does not unfairly burden the prosecution. Indeed, in Staples v. United States, the Court rejected the- exact same argument from the Government and said that the very mens rea requirement at issue here — knowledge that the gun was automatic — would be easy enough to prove: “The Government contends that ... requiring proof of knowledge would place too heavy a burden on the Government and obstruct the proper functioning of § 5861(d). But knowledge can be inferred from circumstantial evidence, including any external indications signaling the nature of the weapon. And firing a fully automatic weapon would make the regulated characteristics of the weapon immediately apparent to its owner. In short, we are confident that when the defendant knows of the characteristics of his weapon that bring it within the scope of the Act, the Government will not face great difficulty in proving that knowledge.” 511 U.S. 600, 615-16 n. 11, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (citation omitted); see also Flores-Figueroa v. United States, 556 U.S. 646, 129 S.Ct. 1886, 1893, 173 L.Ed.2d 853 (2009) (“The difficulties of proof along with the defendant’s necessary guilt of a predicate crime and the defendant’s necessary knowledge that he has acted ‘without lawful authority,’ make it reasonable, in the Government’s view, to read the statute’s language as dispensing with the knowledge requirement. We do not find this argument sufficient, however, to turn the tide in the Government’s favor.”).[24]
In rejecting the Government’s repeated claims that the presumption of mens rea makes it too difficult to convict, the Supreme Court has tartly replied that strict liability can make- it too easy to convict: “The Government asks us by a feat of construction radically to change the weights and-balances in the scales of justice. The purpose and obvious effect of doing away with the requirement of a guilty intent is to ease the prosecution’s path to conviction, to strip the defendant of such benefit as he derived at common law from innocence of evil purpose, and to circumscribe the freedom heretofore allowed juri'es.” Morissette v. United States, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952).
If proving mens rea as to a specific element is indeed considered too burdensome for the prosecution, Congress can always eliminate the mens rea requirement for a particular element or crime, subject to constitutional limits. As the Supreme Court said in Staples: “Of course, if Congress thinks it necessary to reduce the Government’s burden at trial to ensure proper enforcement of the Act; it remains free to amend § 5861(d) by explicitly eliminating a mens rea requirement.” 511 U.S. at 616 n. 11, 114 S.Ct. 1793. So too here.
The presumption of mens rea is a core element of the rule of law; it also is workable and practical.
Convicting a defendant of this Section 924(c) offense and imposing an extra 20 *553 years of mandatory imprisonment based on a fact the defendant did not know is unjust and incompatible with deeply rooted principles of American law. The Supreme Court has applied the presumption of mens rea precisely to avoid such injustice. Justice Jackson’s opinion in Morissette described the link between mens rea and bedrock American principles of justice and responsibility: “The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child’s familiar exculpatory ‘But I didn’t mean to,’ and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution.” Morissette v. United States, 342 U.S. 246, 250-51, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (footnote omitted).
The debate over mens rea is not some philosophical or academic exercise. It has major real-world consequences for criminal defendants. And it takes on added significance in an era of often lengthy mandatory minimum sentences. In this statute, dispensing with mens rea means an extra 20 years of mandatory imprisonment for the defendant, tripling the mandatory minimum sentence from 10 years to 30 years. And the 30-year sentence must be served consecutively to (that is, in addition to) the sentence for the underlying robbery. That is an extraordinarily harsh result for a fact the defendant did not know.
It’s tempting to conclude that Burwell got what he deserved — that carrying a semi-automatic gun during a robbery (as Burwell allegedly believed he was doing) is just as depraved and blameworthy as carrying an automatic gun during a robbery. But neither Congress nor the Supreme Court agrees. Congress deliberately selected 10 years as the mandatory minimum sentence for a person who commits a robbery while carrying a semi-automatic gun. And Congress deliberately chose 30 years as the mandatory minimum sentence for a person who commits a robbery while carrying an automatic gun. As the Supreme Court explained in O’Brien, Congress drew that dramatic distinction because it believed that carrying an automatic gun during the robbery reflected significantly greater moral depravity by the defendant. But that link between the automatic weapon and greater moral depravity does not hold if the defendant actually thought his gun was a semi-automatic.
I would conclude that the presumption of mens rea applies to the automatic weapon element of Section 924(c). Applying that presumption, I would hold that the Government had to prove that Burwell knew his firearm was automatic. Of course, a properly instructed jury might or might not find Burwell guilty, but he is entitled to a jury instruction on whether he had the mens rea required for this offense. Because the District Court did not require the Government to prove that Burwell knew his gun was automatic, I would vacate Burwell’s Section 924(c)(l)(B)(ii) conviction. I respectfully dissent.

. An automatic weapon, also referred to as a machine gun, "fires repeatedly with a single *528 pull of the trigger. That is, once its trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted.” Staples v. United States, 511 U.S. 600, 602 n. 1, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). A semi-automatic weapon, by contrast, "requires no manual manipulation by the operator to place another round in the chamber after each round is fired” but "fires only one shot with each pull of the trigger.” Id. The two kinds of weapons may appear externally similar if not identical. Moreover, "virtually any semiautomatic weapon may be converted, either by internal modification or, in some cases, simply by wear and tear, into a machinegun.... Such a gun may give no externally visible indication that it is fully automatic.” Id. at 615, 114 S.Ct. 1793. The Supreme Court has stated that in certain circumstances, therefore, an individual might "genuinely and reasonably” believe that he possesses "a conventional semi-automatic” weapon when in fact the weapon is fully automatic. Id. (citation omitted).

. To be clear, I would reach the same result in this case even without Flores-Figueroa on the books. The majority opinion is therefore wrong to say that Flores-Figueroa is the “lever” on which I am relying. Maj. Op. at 515. Rather, Flores-Figueroa simply confirms and reinforces the approach indicated by a long line of Supreme Court precedents.

. An element of the offense is a "fact necessary to constitute the crime.” Almendarez-Torres v. United States, 523 U.S. 224, 240, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (citation omitted). "Characteristics of the offense itself are traditionally treated as elements....” United States v. O’Brien, - U.S. -, 130 S.Ct. 2169, 2176, 176 L.Ed.2d 979 (2010). The elements of the offense are often distilled into three categories: the defendant's conduct, the attendant circumstances, and the results or consequences. See Model Penal Code § 1.13(9) (Official Draft & Revised Comments 1985); Wayne R. LaFave, Criminal Law 8-12 (5th ed.2010).
This case concerns whether the presumption of mens rea applies. If the presumption of mens rea applies, a subsidiary question is what level of mens rea is required. When Congress does not specify a mens rea, courts apply the presumption of mens rea and generally state that either purpose or knowledge suffices with respect to the elements of the offense: the defendant’s conduct, the attendant circumstances, and the consequences of the crime. See Bailey, 444 U.S. at 408, 100 S.Ct. 624 (‘TT]he cases have generally held that, except in narrow classes of offenses, proof that the defendant acted knowingly is sufficient to support a conviction.”); see also, e.g., Carter v. United States, 530 U.S. 255, 269-70, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) (in determining what level of mens rea — whether purpose or knowledge — to apply in a case where the defendant's conduct would be innocent if the facts were as he believed, the "presumption in favor of scienter requires a court to read into a statute only that mens rea which is necessary to separate wrongful conduct from otherwise innocent conduct”) (internal quotation marks omitted); Staples v. United States, 511 U.S. 600, 619, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (knowledge); Posters 'N' Things, Ltd. v. United States, 511 U.S. 513, 523-24, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994) (knowledge); United States v. U.S. Gypsum Co., 438 U.S. 422, 444, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) (knowledge).
Therefore, if the presumption of mens rea applies to this statute, the Government should be required to prove that the defendant at least knew the automatic character of the gun. See Staples, 511 U.S. at 619, 114 S.Ct. 1793 (similarly requiring knowledge of automatic character of gun).

. '‘[I]n the absence of clear congressional direction to the contrary, textualists read mens rea requirements into otherwise unqualified criminal statutes because established judicial practice calls for interpreting such statutes in light of common law mental state requirements.” John F. Manning, The Absurdity Doctrine, 116 Harv. L.Rev. 2387, 2466 (2003).

. Traditionally, knowledge of the law, as opposed to knowledge of the facts, was not required. But given the modem trend toward criminalization of actions that are not inherently evil (not "malum in se,” to use the Latin phrase), modern statutes sometimes also require proof of the defendant’s knowledge of the law. See Cheek v. United States, 498 U.S. 192, 199-204, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) (requiring Government to prove defendant’s knowledge of law to obtain criminal tax conviction); United States v. Moore, 612 F.3d 698, 703-04 (D.C.Cir.2010) (Kavanaugh, L, concurring) (criminal statutes penalizing "willful” violations require proof of defendant’s knowledge of law).

. Better than most, Justice Jackson could spot wolves in sheep’s clothing. Cf. Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 638, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (Jackson, J., concurring) (“Presidential claim to a power at once so conclusive and preclusive must be scrutinized with caution, for what is at stake is the equilibrium established by our constitutional system.”); Korematsu v. United States, 323 U.S. 214, 246, 65 S.Ct. 193, 89 L.Ed. 194 (1944) (Jackson, J., dissenting) (”[O]nce a judicial opinion rationalizes such an order to show that it conforms to the Constitution, or rather rationalizes the Constitution to show that the Constitution sanctions such an order, the Court for all time has validated the principle of racial discrimination in criminal procedure and of transplanting American citizens. The principle then lies about like a loaded weapon ready for the hand of any authority that can bring forward a plausible claim of an urgent need.”); West Virginia State Board of Education v. Barnette, 319 U.S. 624, 642, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) (Jackson, J., for the Court) ("But freedom to differ is not limited to things that do not matter much. That would be a mere shadow of freedom.”).

. The principle undergirding the presumption of mens rea is so fundamental that the Supreme Court has held that, in some circumstances, imposing criminal liability without proof of mens rea is unconstitutional. See Lambert v. California, 355 U.S. 225, 228-30, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957); see also United States v. X-Citement Video, Inc., 513 U.S. 64, 78, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (noting constitutional problems that can ensue from strict liability). Some have asserted that when the Constitution was ratified and the Sixth Amendment adopted, "part of what was guaranteed to criminal defendants was the right to have a jury decide whether they were morally blameworthy.” Ann Hopkins, Mens Rea and the Right to Trial by Jury, 76 Calif. L.Rev. 391, 397 (1988).

. The Supreme Court has since made clear that the presumption of mens rea applies to all federal criminal statutes, not just those defining crimes with roots in the common law. See Carter v. United States, 530 U.S. 255, 268 n. 6, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000); Staples v. United States, 511 U.S. 600, 605-06, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994); id. at 620 n. 1, 114 S.Ct. 1793 (Ginsburg, J., concurring in judgment).

. Justice Scalia, joined by Justice Thomas, also agreed with the Court's decision, but he said that the statutory text alone dictated the result. He noted that the Court was “not content to stop at the statute's text,” but also was relying on background mens rea principles. Flores-Figueroa, 129 S.Ct. at 1894 (Scalia, J., concurring in part and concurring in judgment). Justice Scalia agreed that the presumption of mens rea has significant force, but he said that courts should be cautious not to “expand a mens rea requirement that the statutory text has carefully limited.” Id. In other words, Justice Scalia emphasized that Congress through statutory text may choose to override the presumption of mens rea. Of course, the Section 924(c) offense at issue in our case is silent about mens rea, so that concern does not pertain here.

. Although not applicable in this case, there are a few categorical qualifications to the presumption of mens rea that historically have co-existed alongside the presumption. The presumption of mens rea does not generally apply to public welfare offenses with minor penalties, to jurisdictional-only elements, or to a few elements historically applied in a strict liability manner. See X-Citement Video, 513 U.S. at 71-72 & nn. 2-3, 115 S.Ct. 464. In this case, all agree that the automatic weapon element in Section 924(c) does not fall into any of those categories.
Public welfare offenses carry light sanctions (usually six months or less) and "regulate potentially harmful or injurious items.” Staples, 511 U.S. at 607, 616-19, 114 S.Ct. 1793; see, e.g., United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922) (distributing unregistered drugs without valid prescription). Elements are jurisdictional-only if they seek only to "confer jurisdiction on the federal courts.” United States v. Feola, 420 U.S. *538 671, 676 n. 9, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975). A typical example is the federal status of property or the federal affiliation of an individual. See, e.g., id. at 684, 95 S.Ct. 1255 (fact that victim of assault is federal officer). The most well-known offense elements that were historically applied in a strict liability manner are the victim’s age in a statutory rape case and a death resulting from a felony in a felony-murder case. See Dean v. United States, 556 U.S. 568, 129 S.Ct. 1849, 1855, 173 L.Ed.2d 785 (2009); X-Citement Video, 513 U.S. at 72 n. 2, 115 S.Ct. 464.
When this dissenting opinion says that the presumption of mens rea applies to "each element” of the offense, it still means to recognize those narrow traditional qualifications.

. Even before Dean, most courts of appeals likewise recognized that the presumption of mens rea does not apply to sentencing factors, but rather only to elements of the offense. See, e.g., United States v. Dean, 517 F.3d 1224, 1230 (11th Cir.2008) (argument for applying "general presumption against strict liability in criminal statutes” is "unpersuasive as there is a distinction between elements of an offense and sentencing enhancements for conduct during perpetration of a violent criminal act"), aff'd, 129 S.Ct. 1849; United States v. Vargas-Duran, 356 F.3d 598, 611 (5th Cir. 2004) ("Although there is a presumption that criminal statutes include an element of mental culpability, and strict liability crimes are disfavored, the use of force' requirement in § 2L1.2 is part of a strict liability 16-level sentencing enhancement and not part of a strict liability criminal statute.") (citation omitted); United States v. Nava-Sotelo, 354 F.3d 1202, 1206 (10th Cir.2003) ("Because the brandishing and discharge provisions of § 924(c) are sentencing factors, not elements, the government was not required to show that Nava-Sotelo knowingly or intentionally discharged his weapon.”); United States v. Walton, 255 F.3d 437, 444 (7th Cir.2001) (“In short, Walton was not convicted of a strict liability crime (in violation of X-Citement Video ), but instead was merely subject to a strict liability sentencing enhancement."), United States v. Lavender, 224 F.3d 939, 941 (9th Cir.2000) ("Sentencing factors, however, are not separate criminal offenses and as such are not normally required to carry their own mens rea requirements.”); see also United States v. Lam Kwong-Wah, 924 F.2d 298, 304 (D.C.Cir.1991) ("It seems clear that, under the amended Guidelines, scienter is not required as a general matter.”).

. Under Section 924(c), a person who, "during and in relation to any crime of violence or drug trafficking crime ..., uses or carries a firearm" — "or who, in furtherance of any such crime, possesses a firearm" — shall be "sentenced to a term of imprisonment of not less than 5 years.” "If the firearm possessed by” the person is a "semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years.” But "[i]f the firearm possessed by” the person "is a machinegun,” “the person shall be sentenced to a term of imprisonment of not less than 30 years.” 18 U.S.C. § 924(c)(l)(A)-(B).

. A fact is an element of the offense for mens rea purposes if Congress made it an element of the offense. An interesting question — not presented in this case — is how the presumption applies to a fact that Congress made a sentencing factor but that must be treated as an element of the offense for Fifth and Sixth Amendment purposes. See Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The presumption of mens rea arguably should apply in those cases as well, given the presumption’s historical foundation and quasi-constitutional if not constitutional basis. But I need not cross that bridge in this case because O'Brien said that Congress intended the automatic character of the gun to be an element of the Section 924(c) offense, not a sentencing factor.

.Ten years before O’Brien, the Court unanimously reached the same conclusion about a previous version of Section 924(c). See Castillo v. United States, 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000). Reasoning that "the difference between carrying, say, a pistol and carrying a machinegun ... is great, both in degree and kind,” the Castillo .Court concluded that "Congress intended the firearm type-related words it used in § 924(c)(1) to refer to an element of a separate, aggravated crime,” not merely a sentencing factor. Id. at 126-27, 131, 120 S.Ct. 2090.

. The majority opinion notes that O’Brien did not address the mens rea requirement. See Maj. Op. at 505-06. The question presented to the Supreme Court in O’Brien was whether the automatic character of the gun had to be proved to a jury beyond a reasonable doubt. The answer depended on whether it was an element of the Section 924(c) offense. The Court said that it was an element of the offense. Because the mens rea issue was not presented, the Court quite reasonably did not reach out to sua sponte address mens rea. In any event, the Government had conceded (correctly) in the district court that proof of the defendant's mens rea— that is, proof that the defendant knew the automatic character of the weapon — would be required if the automatic character of the gun were an element of the offense. See United States v. O’Brien, 542 F.3d 921, 923 (1st Cir. 2008), aff'd, 130 S.Ct. 2169.
What matters for our purposes are: (i) the Supreme Court in O'Brien squarely held that the automatic character of the weapon is an element of the offense, and (ii) the Supreme Court has repeatedly held that the presumption of mens rea applies to elements of the offense.

. The Harris Court described the automatic character of the gun as a sentencing factor and certainly never said anything like: “The automatic character of the gun is an element of the offense but the presumption of mens rea nonetheless does not apply.” And even if the relevant portion of Harris had said (which it didn't) that the automatic character of the gun was an element of the offense but that the presumption of mens rea nonetheless did not apply, such an analysis would itself no longer be good law in the wake of later Supreme Court cases such as Staples, Posters 'N' Things, X-Citement Video, and Flores-Figueroa that have held the presumption of mens rea applies to each element of the offense.

. Even if Harris’s analysis on the Section 924(c) mens rea issue had not been undermined by later Supreme Court precedents, Hams was a three-judge panel decision. The en banc Court has the authority — both under Rule 35 of the Appellate Rules and general principles of horizontal stare decisis — to overrule three-judge panel decisions that the en banc Court believes to be wrongly decided and exceptionally important. See, e.g., Fields v. Office of Eddie Bernice Johnson, 459 F.3d 1, 12 (D.C.Cir.2006) (en banc) (overruling Browning v. Clerk, U.S. House of Representatives, 789 F.2d 923 (D.C.Cir.1986)); Florida Audubon Society v. Bentsen, 94 F.3d 658, 669 (D.C.Cir.1996) (en banc) (overruling City of Los Angeles v. National Highway Traffic Safety Administration, 912 F.2d 478 (D.C.Cir.1990)); King v. Palmer, 950 F.2d 771, 785 (D.C.Cir. 1991) (en banc) (overruling McKenzie v. Kenniclcell, 875 F.2d 330 (D.C.Cir.1989)); Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516, 1524 (D.C.Cir.1988) (en banc) (overruling Laffey v. Northwest Airlines, Inc., 746 F.2d 4 (D.C.Cir.1984)); Church of Scientology of California v. IRS, 792 F.2d 153, 156-60 (D.C.Cir.1986) (en banc) (overruling Neufeld v. IRS, 646 F.2d 661 (D.C.Cir.1981)); see also, e.g., Chung v. Dep’t of Justice, 333 F.3d 273, 278 n. * (D.C.Cir.2003) (overruling Griffin v. U.S. Parole Commission, 192 F.3d 1081 (D.C.Cir.1999)) (Irons footnote).

. As indicated above, I would reach the same result in this case even absent Flores-Figueroa. See supra note 2. Flores-Figueroa confirms and reinforces the approach indicated by a long line of Supreme Court precedents.

. Justice Alito's concurrence succinctly summarized the presumption of mens rea applied by the Court, and added that the presumption was of course not conclusive: “In interpreting a criminal statute such as the one before us, I think it is fair to begin with a general presumption that the specified mens rea applies to all the elements of an offense, but it must be recognized that there are instances in which context may well rebut that presumption.” Flores-Figueroa, 129 S.Ct. at 1895 (Alito, J., concurring in part and concurring in judgment).

. The Supreme Court's decision in Flores-Figueroa agreed with this Court’s earlier decision in Villanueva-Sotelo — and not with the position that had been articulated in the Villanueva-Sotelo dissenting opinion. See Villanueva-Sotelo, 515 F.3d at 1258-61 (Henderson, J., dissenting) (arguing that proof of mens rea for one element should not be required in part because it was not necessary to avoid criminalizing otherwise innocent conduct). The majority opinion today nonetheless employs some of the same reasoning that the dissenting opinion in Villanueva-Sotelo used.

. Judge Henderson’s concurring opinion suggests that the defendant forfeited his mens rea objection in the District Court and that the plain error standard of review thus should apply in this case. Under our case law, that is wrong. The District Court wrote a careful seven-page opinion (which it issued before the Supreme Court’s 2010 decision in United States v. O’Brien) rejecting the defense's argument on the mens rea issue. See United States v. Morrow, No. 04-355, 2005 WL 3163804 (D.D.C. June 19, 2005); see also Henderson Concurring Op. at 518 n. 1. The District Court explained its view that this Court's 1992 decision in United States v. Harris was binding in this Circuit and that the defendants (including Burwell) therefore could not argue to the jury that they thought their weapons were semi-automatic. It is true that the defense did not renew that objection again. But that was entirely appropriate under our precedents: When a district court has fully considered and then rejected an argument, we do not force a defendant "to go through the futile exercise of interposing the same objection to the jury instructions.” United States v. Williams, 194 F.3d 100, 102 (D.C.Cir. 1999). After the District Court’s decision, any additional objection from the defense would have been futile, and Burwell did not need to interpose another futile objection to preserve his argument.
Judge Henderson's concurring opinion also contends that any error here was harmless. See Henderson Concurring Op. at 519 n. 6. That, too, is wrong under the precedents. Failing to instruct on the required mens rea cannot be deemed harmless here. To be sure, it is possible that the jury might have disbelieved Burwell and found that he did know the gun wás automatic. But that possibility does not justify dispensing with a jury instruction requiring the Government to prove beyond a reasonable doubt that Burwell knew the gun was automatic. Nor would it justify this Court in affirming this Section 924(c) conviction notwithstanding the lack of such a jury instruction. As the Supreme Court stated in Morissette: "Of course, the jury, considering Morissette's awareness that these casings were on government property, his failure to seek any permission for their removal and his self-interest as a witness, might have disbelieved his profession of innocent intent and concluded that his assertion of a belief that the casings were abandoned was an afterthought. Had the jury convicted on proper instructions it would be the end of the matter. But juries are not bound by what seems inescapable logic to judges." Morissette v. United States, 342 U.S. 246, 276, 72 S.Ct. 240, 96 L.Ed. 288 (1952); see also United States v. U.S. Gypsum Co., 438 U.S. 422, 446, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) ("ultimately the decision on the issue of intent must be left to the trier of fact alone”).

. Indeed, the evidence in this very case illustrates the difficulty of distinguishing semiautomatic from automatic weapons. A firearms expert testified that the guns in question were capable of semi-automatic or automatic operation. When asked "without firing the gun or being a firearms expert, would you know whether or not that gun was fully automatic or semi-automatic?,” the expert replied, "It's not readily apparent, no.” Trial Tr. *549 7286-87, Morning Session, June 15, 2005, J.A. 307-08; see also id. at 7284-93, J.A. 305-14.

. The majority opinion says it is not “unusual to punish individuals for the unintended consequences of their unlawful acts.” Maj. Op. at 507. To be sure, Congress sometimes overrides the presumption of‘mens rea and expressly requires only recklessness or negligence, or even strict liability, for an element of an offense. The question here, however, is how to interpret a statute silent about mens rea. The case law establishes that the presumption of mens rea applies to each element of the offense. And applying the presumption of mens rea, courts generally require proof of the defendant’s purpose or knowledge for each element. See supra note 3; see, e.g., U.S. Gypsum, 438 U.S. at 444, 98 S.Ct. 2864 (ap- ' plying presumption of mens rea to consequence element and saying that purpose or knowledge suffices).
The majority opinion also focuses on the verb "is” in Section 924(c): "If the firearm possessed ... is a machinegun ... the person shall be sentenced to a term of imprisonment of not less than 30 years.” 18 U.S.C. § 924(c)(1)(B) (emphasis added). The majority opinion says that similar language in Dean v. United States focused on "whether something happened — not how or why it happened.” 556 U.S. 568, 129 S.Ct. 1849, 1853, 173 L.Ed.2d 785 (2009). And the Dean Court required no showing of mens rea. But again, Dean did not involve an element of the offense, and thus the presumption of mens rea did not apply. With respect to elements of the offense, the presumption of mens rea does apply. And merely using "is” in this way surely does not suffice to overcome the presumption. See X-Citement Video, 513 U.S. at 68, 115 S.Ct. 464 (similarly applying presumption of mens rea to statutory language— "involves the use of a minor” — that empha *551 sized whether something happened, not how or why it happened).

. Proving that the defendant knew a fact does not require proving that the defendant was certain of that fact. "When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence, unless he actually believes that it does not exist.” Model Penal Code § 2.02(7) (Official Draft & Revised Comments 1985); see Global-Tech Appliances, Inc. v. SEB S.A., — U.S. -, 131 S.Ct. 2060, 2069, 179 L.Ed.2d 1167 (2011); Turner v. United States, 396 U.S. 398, 416 n. 29, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); Leary v. United States, 395 U.S. 6, 46 n. 93, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); Wayne R. LaFave, Criminal Law 262-63 & n.27 (5th ed.2010).